743 So.2d 296 (1999)
Ralph JOHNSON, Plaintiff-Appellee,
v.
BRECK CONSTRUCTION COMPANY, Defendant-Appellant.
No. 32,311-WCA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
*297 Crawford & Anzelmo by Neal L. Johnson, Jr., Monroe, Counsel for Appellant.
Frederick B. King, P.C., Monroe, Counsel for Appellee.
Before BROWN, STEWART & PEATROSS, JJ.
PEATROSS, J.
Defendant, Breck Construction Company ("Breck"), appeals the judgment of the Workers' Compensation Judge ("WCJ") awarding Plaintiff, Ralph Johnson, medical and indemnity benefits, penalties and attorney fees. Plaintiff has answered the appeal requesting additional attorney fees and costs associated with defending the appeal. For the reasons stated herein, we reverse.

FACTS AND PROCEDURAL BACKGROUND
Plaintiff, a welder employed by Breck, was working at the Koch Nitrogen Plant ("Koch") in Sterlington, Louisiana, on March 20, 1997. He arrived on the job site at 4:00 a.m. to assist in the welding of a new cap on a stainless steel hydrogen vessel, located on the Koch premises. The vessel, which is shaped much like a coke bottle, is encased in a metal "skin" or box, which is then packed with insulation. Plaintiffs work was to be performed on top of the vessel and box which was a freestanding structure approximately 30 to 40 feet tall. The surface of the top of the structure where Plaintiff was working was approximately eight to ten feet square. A hole, approximately four feet by four feet, was cut into the top of the box and the insulation around the vessel was dug out so the cap could be reached.
A tarpaulin enclosure or "hooch" had been erected over the top of the vessel to prevent the wind from affecting the weld by blowing the hot metal out of shape. While work was being performed, the vessel, which had contained hydrogen, was being purged out with nitrogen.[1] Nitrogen, which is heavier than hydrogen, is introduced at the bottom of the vessel and then builds up and escapes through the opening at the top where Plaintiff and others were working.
A monitor was placed within the encapsulated work area under the "hooch" to test the oxygen and explosive content of the air in the confined space.[2] If the oxygen content in the space dropped below 19.5 percent, a loud and continuous beep would emit from the alarm until the level was corrected. An employee of Koch, *298 Boyce Keister, checked the monitor at 8:20 a.m., before it was put into service. Another employee of Koch, James Wilks, was asked to check the monitor at 2:15 p.m. The monitor was found to be in proper working order on both occasions.
Plaintiff testified that he began feeling chest pains, which he described as "a little discomfort," at approximately 8:00 or 8:30 a.m. on March 20, 1997. He mistakenly thought the pain was due to heartburn or indigestion. During the course of the morning, Plaintiff made at least two trips down from the vessel to retrieve equipment. At approximately 12:00 or 12:30 p.m., he climbed down from the top of the vessel for his lunch break and attempted to find some antacids. At this time, he began to feel very ill and experienced pain and a tingling sensation in both arms. Plaintiff's supervisor, Charles Canterberry, immediately took Plaintiff to the emergency room of HCA North Monroe Hospital.
The emergency room physician determined that Plaintiff was experiencing an acute inferior myocardial infarction. Mr. Canterberry informed the emergency room physician of the circumstances under which Plaintiff had been working at the time he began to experience the more severe chest pains. Mr. Canterberry testified that he was not certain what was wrong with Plaintiff and wanted to make sure that the emergency room staff was furnished with all information, whether it was relevant or not. The emergency room physician explained to Mr. Canterberry that neither nitrogen nor any other work-related circumstance had anything to do with Plaintiff's myocardial infarction.
The emergency room staff noted that Plaintiff had a positive family history for coronary disease, diabetes and hypertension and that Plaintiff had a history of smoking one to one-and-one-half packs of cigarettes a day for approximately 11 years.[3] Furthermore, Plaintiffs father died as a result of a massive myocardial infarction and his mother has a history of high blood pressure.
Upon receiving information that appeared to indicate the myocardial infarction was not work related, Breck informed HCA North Monroe Hospital that it would not be responsible for Plaintiffs medical bills. Plaintiff was then transferred to LSUMC in Shreveport where he underwent an angiogram and angioplasty procedure. The procedures revealed that Plaintiff was suffering from single vessel coronary artery disease involving a severe stenosis of the right coronary artery with mild decreased left ventricular systolic function. Plaintiffs discharge summary indicated he suffered from coronary atherosclerosis. There was no indication or mention in any of the medical records that the myocardial infarction was related to exposure to nitrogen or lack of oxygen on March 20, 1997.

DISCUSSION
Breck asserts as assignments of error one and two that the WCJ erred in finding that Plaintiff had carried his burden of proof as required by La. R.S. 23:1021(7)(e). We find merit to these assignments.
La. R.S. 23:1021(7)(e) states:
(7) A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was *299 the predominant and major cause of the heart-related or perivascular injury, illness, or death.
The "clear and convincing" standard of proof as required by the statute is a heavier burden of proof than the usual civil burden of proof, "preponderance of the evidence," but is less burdensome than the criminal standard of proof, "beyond a reasonable doubt." Traweek v. City of West Monroe, 30,571 (La.App.2d Cir.5/13/98), 713 So.2d 655, writ denied, 98-1933 (La.11/6/98), 727 So.2d 449. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Id.
We review the findings of fact by a WCJ under the "manifest error" standard. Doucet v. Baker Hughes Production Tools, 93-3087 (La.3/11/94), 635 So.2d 166. The issue is not whether the WCJ was right or wrong, but whether the factual conclusion was reasonable. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Stevens v. Wal-Mart Stores, Inc., 27,977 (La.App.2d Cir.11/01/95), 663 So.2d 543.
The WCJ stated in her oral reasons for judgment that she found that Plaintiff had carried his burden of proving, by clear and convincing evidence, that his working conditions on March 20, 1997, were unusual and extraordinary as required by La. R.S. 23:1021(7)(e), because the nitrogen purge was blowing directly in Plaintiffs face. While we agree that Plaintiff and two other Breck employees testified that they had not experienced a situation in which they had to work over a purge that blew directly in their faces, we do not find it to be unusual or extraordinary in nature.
In determining this question of fact, we look to whether an ordinary reasonable person of usual sensibilities would find the stress "extraordinary." Renter v. Willis-Knighton Medical Center, 28,589 (La.App.2d Cir.8/23/96), 679 So.2d 603; Bass v. Farmer & Cheatham, 94-1281 (La. App. 1st Cir.6/30/95), 658 So.2d 324, writ denied, 95-2289 (La.12/8/95), 664 So.2d 423; Bryant v. Giani Investment Co., 626 So.2d 390 (La.App. 4th Cir.1993), writ denied, 94-0089 (La.3/18/94), 634 So.2d 852; Cressionnie v. Fisk Electric, 93-931 (La. App. 5th Cir.2/14/96), 671 So.2d 3. Mr. Canterberry testified that he had approximately 35 years of welding experience and that he had welded in situations where the purge emitted directly in the area where he was working. Even Plaintiff testified that the purge itself felt only like a slight breeze.
Most important is the WCJ's misunderstanding of the content of the purge. The WCJ states that, as she understood it, it was the nitrogen that was being purged, that nitrogen is a dangerous gas, that it was unsafe for Plaintiff or anyone to be around nitrogen, that exposure to nitrogen had a direct relationship to Plaintiffs myocardial infarction and that Mr Canterberry related Plaintiffs exposure to nitrogen to the emergency room physician because Mr. Canterberry felt it was related to Plaintiffs myocardial infarction.
Mr. Wilks, the safety superintendent at Koch, testified, however, that nitrogen is a harmless gas which makes up approximately 80 percent of the air we breath. It is not the exposure to nitrogen, but the displacement of oxygen by excessive nitrogen that may cause problems, although the nature and specifics of those problems was not made clear. Moreover, both Mr. Donald Billing, a co-worker of Plaintiffs, and Mr. Canterberry testified that it is not unusual or extraordinary for a stainless steel vessel to be purged with nitrogen or another innocuous gas. Mr. Canterberry testified that anytime stainless steel is welded on it must be purged because the makeup of the material causes "sugar" or granules to form on the inside of the vessel. A surface must be smooth to accept a weld and purging will restore the smooth surface.
*300 We also find that, in her determination of the predominate or major cause of Plaintiff's myocardial infarction under La. R.S. 23:1021(7)(e)(ii), the WCJ incorrectly shifted the burden of proof to Breck. The WCJ stated, "... there is no evidence that the low oxygen content did not cause the [Plaintiff]'s heart attack,...."
Appellate review of a question of law, which is de novo, is simply to determine whether the trial court was legally correct or legally incorrect. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-C-0690 (La.7/5/94), 640 So.2d 237; Conagra Poultry Co. v. Collingsworth, 30,155 (La.App.2d Cir.1/21/98), 705 So.2d 1280. The burden to prove the cause of a heart-related injury under the statute lies squarely with the Plaintiff. Not only is the employer not required to prove a negative, there is no provision in the statute for a shifting of the burden of proof. We find, therefore, that the WCJ was legally incorrect in her application of La. R.S. 23:1021(7)(e)(ii) to the case sub judice.
Given the WCJ's error of law, in our de novo review of the record as to that issue, we find that there is no medical evidence to indicate that a lack of oxygen was even a contributing cause of the myocardial infarction. To the contrary, the medical evidence reveals several pre-existing risk factors present in Plaintiffs medical, familial and personal history. Plaintiff had been a smoker for many years and had just recently quit; Plaintiff had a family history of high blood pressure, heart disease and diabetes. The angiogram performed on Plaintiff at LSUMC revealed an almost total blockage of a coronary artery. See Charles v. Travelers Insurance Co., 627 So.2d 1366 (La.1993); Edwards v. Fischbach & Moore, Inc., 31-371 (La. App.2d Cir.12/9/98), 722 So.2d 344; Walker v. Distran Steel Fabrication, 97-1128 (La. App. 3d Cir.2/4/98), 705 So.2d 1299; Estate of Andre v. Frey, 96-711 (La.App. 3d Cir.12/18/96), 685 So.2d 604. We find no support in the record, therefore, for the WCJ's position that the lack of oxygen or exposure to nitrogen could have been the predominate cause of Plaintiffs myocardial infarction.
Since we find that Plaintiff did not suffer an injury arising out of the course and scope of his employment under La. R.S. 23:1021(7)(e), we also reverse the award of penalties and attorney fees and deny Plaintiffs request in his answer for additional attorney fees for the defense of this appeal.

DECREE
For the foregoing reasons, the judgment of the Workers' Compensation Judge finding in favor of Plaintiff, Ralph Johnson, and against Defendant, Breck Construction Company, is reversed. Costs are assessed to Plaintiff, Ralph Johnson.
REVERSED.
NOTES
[1] Hydrogen is extremely flammable and can be ignited merely by static electricity.
[2] A 15 to 20 foot hose attached to the monitor is placed in the immediate area where the air content needs to be read. The monitor has a self-contained pump which continuously samples and monitors the air.
[3] Plaintiff testified that he had quit smoking three months prior to the incident.