746 So.2d 746 (1999)
Theodor GRAY, Plaintiff-Appellant,
v.
Mike MOUNIR, M.D., Defendant-Appellee.
No. 99-538.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1999.
*747 Lee Ann Barker Iles, Lafayette, for Theodor Gray.
John A. Bivins, Harmon F. Roy, Lafayette, for Mike Mounir M.D.
Patrick S. Ottinger, Lafayette, for Medical Review Panel.
BEFORE: THIBODEAUX, COOKS and WOODARD, Judges.
THIBODEAUX, Judge.
Theodor Gray timely filed a claim for workers' compensation benefits relating to a heart condition with the Office of Workers' Compensation (hereinafter "OWC"). After being treated by Dr. Mike Mounir for this condition, Mr. Gray sued Dr. Mounir to recover medical malpractice damages. The suit was filed more than one year following the date of the alleged malpractice. The defendant, Dr. Mounir, filed a peremptory exception of prescription and/or peremption. The trial court granted the exception of prescription. Mr. Gray appeals this judgment, contending that the suit timely filed for workers' compensation benefits interrupted prescription on the medical malpractice claim. For the reasons which follow, we affirm the judgment of the trial court granting Dr. Mounir's exception of prescription.

I.
ISSUES
We shall consider:
1. whether the Office of Workers' Compensation is a "court of competent jurisdiction" so that a filing therein interrupts prescription under La.Civ.Code art. 3462;
2. whether the trial court committed manifest error in finding that Theodor Gray failed to prove a workrelated heart attack so that solidary liability against Dr. Mounir would be defeated and prescription in the medical malpractice suit would not be interrupted; and,
3. whether a consent judgment entered into between Mr. Gray and his employer's insurer is proof of solidary liability.

II.

FACTS
On June 16, 1994, Theodor Gray experienced a burning sensation in his chest while working on the job. On June 18, 1994, Dr. Mike Mounir administered a stress test to Mr. Gray at the Cardiology Clinic of Lafayette. The test indicated *748 some arterial blockage. Dr. Mounir scheduled an angiogram for June 20, 1994.
Although we do not have the benefit of Mr. Gray's testimony, the record suggests that he performed six hours of machinery repair work and left the job site at approximately 1:00 p.m. on June 18th because of chest pains. He arrived at the emergency room at Lafayette General Hospital at approximately 10:00 p.m., reporting chest and arm pains, and nausea. He was taken to the catheter lab, where a balloon angioplasty was performed. Mr. Gray was discharged from the hospital on June 21, 1994, and returned to work on June 27, 1994. He again returned to the hospital on July 15, 1994 with chest pains. He was released on July 18th and subsequently suffered an angina attack. Mr. Gray ultimately underwent a triple bypass surgery at the V.A. hospital in Houston, Texas on August 3, 1994.
On April 20, 1995, Mr. Gray filed a claim for workers' compensation benefits, alleging that he suffered a compensable injury while on the job. Mr. Gray filed a first supplemental and amending petition for workers' compensation benefits. That petition specifically detailed his work activities on June 18, 1994. A Petition to Convene Medical Review Panel was filed by Mr. Gray against Dr. Mounir on June 16, 1997. Mr. Gray alleged that Dr. Mounir breached the standard of care applicable to a cardiologist in failing to restrict the activities of Mr. Gray after a positive stress test on June 18, 1994. Mr. Gray claims that Dr. Mounir's negligence exacerbated his illness. Dr. Mounir filed a peremptory exception of prescription and/or peremption seeking to dismiss the malpractice claim of Mr. Gray.
The trial court concluded that the condition for which Mr. Gray had been treated by Dr. Mounir in June, 1994 was not workrelated. Therefore, solidary liability did not exist. Because of the lack of solidarity, prescription on the claim against Dr. Mounir was not interrupted by the filing of plaintiffs workers' compensation claim. Consequently, the trial court granted Dr. Mounir's exception of prescription and dismissed the medical malpractice claim.

III.

LAW AND ARGUMENT

Court of Competent Jurisdiction
Article 3462 of the Louisiana Civil Code states that:
Prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.
Dr. Mounir asserts that the Office of Workers' Compensation is not a court of competent jurisdiction. He cites Albe v. Louisiana Workers' Compensation, 97-0581, 97-0014 (La.10/21/97); 700 So.2d 824; Spencer v. Gaylord Container Corp., 96-1230 (La.App. 1 Cir. 3/27/97); 693 So.2d 818; and, Walker v. ConAgra Food Services, 28,205 (La.App. 2 Cir. 4/3/96); 671 So.2d 1218.
In Albe, 700 So.2d 824, the supreme court decided only the narrow question of whether the Office of Workers' Compensation had authority to determine constitutional issues. The Louisiana Supreme Court explicitly held that workers' compensation judges of the Office of Workers' Compensation Administration lack subject matter jurisdiction to determine constitutional issues. In Walker v. ConAgra, 671 So.2d 1218, the court did not dispute the authority of the Office of Workers' Compensation or its judges to decide workers' compensation claims; rather, the concern was the terminology being used to describe the OWC's power. The court suggested that, stripped of all subterfuge, the power embodied in the OWC, whether called a court or an administrative body, is *749 indeed the power to hear all claims arising out of work-related injuries.
In Williams v. Sewerage & Water Board of New Orleans, 611 So.2d 1383 (La.1993), the Louisiana Supreme Court concluded that prescription is interrupted with regard to an injured employee's claims against a third-party tortfeasor who was solidarily liable when the employee filed a timely suit seeking workers' compensation benefits from his employer. As the trial court aptly observed, Williams was relied upon in Gary v. Camden Fire Ins. Co., 96-0055 (La.4/2/96), 676 So.2d 553 where the supreme court impliedly reaffirmed its holding that filing a claim with the OWC was sufficient to interrupt prescription against a third-party tortfeasor who was solidarily liable with the employer.
In this case, Mr. Gray indisputably filed a timely claim with the OWC. Because the OWC is the only forum where an employee can bring a claim for a work-related injury, we conclude that the OWC is a court of competent jurisdiction for the purposes of interrupting prescription against a third-party tortfeasor who is jointly or solidarily liable.

Solidary Liability
Ordinarily, when dealing with prescription, the burden of proof is on the party pleading prescription; however, when the plaintiff's petition has clearly prescribed on its face, as it has here, the burden shifts to the plaintiff to prove that prescription has been suspended or interrupted. Younger v. Marshall Ind., Inc., 618 So.2d 866 (La.1993). When the plaintiff's basis for claiming an interruption of prescription is solidary liability between two or more parties, the plaintiff bears the burden of proving that a solidary relationship exists. Id. If such a relationship exists, "interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." La.Civ.Code art. 2324(C). To demonstrate solidarity, Mr. Gray must show that his heart illness arose out of his employment.
Louisiana Revised Statutes 23:1021(7)(e) provides that:
(e) Heart-related or perivascular injuries are heart-related or perivascular injury, illness, or death shall not be consider a personal injury by accident arising out of an in the course of employment and is not compensable pursuant to this chapter unless it is demonstrated by clear and convincing evidence that:
(I) the physical work stress was extraordinary and unusual in comparison to the stress or exertion experience by the average employee in that occupation, and
(ii) the physical work stress or exertion and not some other source of stress or pre-existing condition, was the predominant and major cause of the heart related of perivascular injury, illness, or death.
It is well settled jurisprudence that a court of appeal may not set aside a trial court's or a jury finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury finding is reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact it would have weighed the evidence differently. Id. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id. In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate court must constantly *750 have in mind that their initial review function is not to decide factual issues de novo. Id.
In this case, while both physicians agreed that claimant's coronary arteriosclerosis was attributable to several risk factors, their conclusions as to the predominant and major cause of his heart attack were noticeably different. Dr. Craig Walker was of the opinion that the physical exertion of lifting the heavy components at work was the principal cause of Mr. Gray's heart attack. Dr. Walker stated that he would certainly want a patient like Mr. Gray to avoid physical labor. However, when given a hypothetical situation similar to Mr. Gray's condition, Dr. Walker stated:
"There could have been a spasm or there could have been dehydration. A clot could have occurred. A heart muscle could have starved and flowed through the blood vessels diminished. There are a lot of reasons why that could happen, but we would have to be concerned at that point that it [physical exertion] is a possibility."
When asked if physical exertion similar to Mr. Gray would be a precipitating cause of myocardial infarction, Dr. Walker stated that:
"It certainly could be. As I said, infarction can occur at rest as well. But I would be concerned that it was a precipitating factor in this situation, yes. And I think in legalese terms that would be more likely than not I'd say yes."
Dr. Walker's testimony was somewhat equivocal at best. After reading the entire testimony of Dr. Walker, it is clear to the court that his assessment of Mr. Gray's condition did not reach the "clear and convincing" standard of La.R.S. 23:1021(7)(e). Moreover, there is no testimony by Mr. Gray or anybody detailing the nature of the physical exertion experienced by Mr. Gray. Neither was there any testimony by anyone comparing the physical exertion of Mr. Gray to that of an average employee's physical exertion at his particular place of employment, as required by the statute.
On the other hand, Dr. Mounir testified that the condition for which he treated Mr. Gray on June 18, 1994 could not have been caused by work Mr. Gray performed eight or nine hours earlier that day; otherwise, the plaintiffs condition would have been far worse when he arrived at the emergency room. Dr. Mounir also testified that because of Mr. Gray's underlying and long-existing coronary arteriosclerosis, the additional stress which he experienced from knowing that he had arterial blockage, or a variety of other factors, such as mental stress or smoking after a heavy meal, may have precipitated Mr. Gray's heart attack. Because most heart attacks happen at rest at night, Dr. Mounir concluded that a person would not have to strenuously exert himself to have a precipitating heart attack.
Because there were two permissible views of evidence, the trial court's decision to place more weight on the testimony of Dr. Mounir over that of Dr. Walker, who examined Mr. Gray over a year after the accident allegedly happened, was not manifestly erroneous or clearly wrong. Rosell, 549 So.2d 840.
Younger, 618 So.2d 866, 869 sets forth the standard for assessing the issue of prescription against an untimely sued alleged joint tortfeasor when a timely sued defendant has been exculpated from liability:
[I]f the plaintiff's basis for claiming interruption of prescription is solidary liability between two or more parties, then the plaintiff bears the burden of proving that solidary relationship. However, even if the plaintiff sustains this burden of proving solidary liability at a pre-trial hearing on prescription, if, after trial on the merits, it turns out that under the facts proven by plaintiff there is no solidary liability because the timely filed defendant is found not liable to plaintiff at all, then the exception [of prescription] should be maintained at that time. *751 (Citations omitted); Williams v. Northgate Hospital, 98-1477 (La.App. 3 Cir. 5/5/99), 734 So.2d 1251.
Because Mr. Gray's employer was absolved of any liability for indemnity benefits, which we now affirm, Dr. Mounir cannot be considered a joint or solidary obligor. Therefore, the medical malpractice suit was not timely filed against Dr. Mounir. His exception of prescription is maintained.

Consent Judgment
On October 10, 1997, the workers' compensation judge for the OWC signed a consent judgment in the workers' compensation claim of Mr. Gray "resolving all outstanding issues pending at this time." The consent judgment further stated:
IT IS HEREBY ORDERED that Louisiana Workers' Compensation Corporation pay all medical expenses associated with treatment rendered to Theodor Gray on June 18, 1994, as a result of the cardiovascular event suffered by Theodor Gray on that date. This specifically includes the charges of Lafayette General Hospital and Dr. Mike Mounir.
However, it is the further ORDER of this Court that Louisiana Workers' Compensation Corporation is not responsible for any other charges associated with health care services rendered to Theodor Gray, after his hospitalization of June 18, 1994, specifically but not limited to, charges incurred as a result of a second angioplasty performed on or about July 15, 1994, or triple by-pass surgery performed on or about August 4, 1994.
Based upon this court's finding that the second angioplasty on July 15, 1994, and the triple by-pass surgery performed on August 4, 1994, are non-compensable, Louisiana Workers' Compensation Corporation has no obligation to pay any indemnity benefits whatsoever.
Mr. Gray argues that the consent judgment between the employer's insurer and himself acts as evidence that his employer admits liability for the June 18, 1994 injury, thereby establishing solidary liability by showing that the employer is initially liable for his injury. Dr. Mounir counters that this agreement between third parties cannot establish solidary liability and it cannot be done by agreement of parties other than Dr. Mounir.
A consent judgment is a bilateral contract wherein parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing hope of gain against fear of loss. La.Civ.Code art. 3071; Preston Oil Co. v. Transcontinental Gas Pipe Line Corp., 594 So.2d 908, 913 (La.App. 1 Cir.1991). A judgment, whether it results from the assent of the parties or is the result of a judicial determination after a trial on the merits, is and should be accorded sanctity under the law. Id. The scope of a consent decree must be limited to what is contained within the document itself; it should not be construed as implying wrongdoing on anyone's part. Liquid Carbonic Corp. v. BASF Wyandotte Corp., 468 So.2d 1225 (La.App. 4 Cir.1985).
In this case, the consent judgment did not admit liability for indemnity benefits. Rather, in the interest of concluding litigation and "resolving all outstanding issues pending at [the] time," the workers' compensation insurer agreed to pay for the medical expenses occurred on June 18, 1994. It is clear to this court that the dates of the initial June 18, 1994 injury, the July 15, 1994 angioplasty and the August 4, 1994 triple by-pass surgery are so inextricably intertwined that the workers' compensation judge found that this series of injuries was not work-related and, therefore, non-compensable. Mentioning specific dates in the consent judgment was merely for illustrative purposes. Our conclusion is buttressed by the judgment's declaration that "Louisiana Workers' Compensation Corporation [the employer's insurer] has no obligation to pay any indemnity benefits whatsoever." (emphasis supplied).
*752 The consent judgment cannot be construed as an admission of liability for Mr. Gray's heart condition. Consequently, it cannot be used to impose solidary liability on Dr. Mounir which would interrupt prescription on the medical malpractice claim.

IV.

CONCLUSION
Based on the foregoing reasons, we affirm the trial court's judgment granting the exception of prescription.
All costs are assessed to the plaintiff, Theodor Gray.
AFFIRMED.