h STEWART, J.
In this workers’ compensation case, appellant Zoe Costin seeks review of a judgment of the Office of Workers’ Compensation dismissing her compensation claim on behalf of her deceased husband, Ernest Costin, who suffered a heart attack while employed with LaSalle Testers (“La-Salle”). Finding no error in the dismissal of this claim, we affirm.
FACTS
Ernest Costin, an experienced heavy-equipment operator, was employed by La-Salle as a backhoe and trackhoe operator. Mr. Costin had high blood pressure and diabetes. His job as an equipment operator required motor skill and dexterity rather than heavy manual labor, although he did have to fuel and grease the backhoe at least once a day.
In September 1996, LaSalle was engaged in the installation of sewer lines in Pineville, Louisiana. Part of this job involved placing manhole covers over sewer line access points. The manhole covers were steel disks about three feet across that weighed 300 pounds each. Most of the sewer access points were flush with the ground. To cover these openings, Mr. Costin used the trackhoe to drag a manhole cover across the ground until the cover fell across the opening.
On September 12, 1996, the LaSalle crew came to an access point that was not flush with the ground; instead, the opening was raised by a concrete form between 18 and 24 inches high. A LaSalle supervisor, Martin Tharpe, Jr., worked with Mr. Costin on the raised opening. Tharpe reported that this was a “normal job” for the company. Because of the raised access point, the trackhoe could not be used to place the manhole cover over the opening. It was decided that the crew would raise the cover, which was already lying next to the access point, up the concrete form by rolling the cover up a piece of wood. Two laborers, neither of whom testified, were also present with Mr. Costin and Tharpe, although one of the ^laborers might not have worked on the raised opening. Somehow, the manhole cover was raised onto its edge from where it lay flat on the ground. Mr. Tharpe said that he did not help Mr. Costin to lift the cover and explained that lifting the cover from the ground required two people because of the cover’s great weight. According to Mr. Tharpe, one person could not lift the cover onto its edge.
Once the cover was on its edge, Mr. Costin steadied and balanced the cover by holding its edge as he waited for someone to position the improvised ramp. Then, according to Mr. Tharpe, Mr. Costin “just turned loose and just fell over.” Workers summoned an ambulance, and EMS personnel transported Mr. Costin to a nearby hospital. Mr. Costin never regained consciousness and died in the hospital several days later.
Upon admission to the hospital, Mr. Costin was diagnosed with cardiac arrest *403 secondary to an acute myocardial infarction. The loss of blood flow led to anoxic brain damage and brain death. Dr. Michael Archie, an internist who treated Mr. Costin, reported that Mr. Costin also suffered acute renal failure during the episode. Dr. Archie, testifying by deposition, stated that the risk of heart attack to a person who has high blood pressure and diabetes is markedly increased over the risk to a person without these conditions.
Although Dr. Archie was initially under the impression that Mr. Costin had his heart attack while at home, Dr. Archie remembered during the deposition the actual circumstances as reported to him by an unidentified person who said that he was a co-worker of Mr. Costin’s. The circumstances preceding Mr. Costin’s heart attack, as described by Dr. Archie, involved Mr. Costin “lifting a heavy manhole cover and he was not used to doing that kind of work.. He was sweating profusely. It was hot. And it was after that event that he fell to the ground.... ” Dr. Archie stated that increased work activities could have led to Mr. Costin’s myocardial infarction and that the two were temporally related, but that he did not know how ^stressful it would have been for Mr. Costin to hold the manhole cover on its edge. When asked to express an opinion as to whether Mr. Costin would have had a heart attack if he had not been engaging in any stressful activity, Dr. Archie could not say that Mr. Costin would not have had a heart attack if he had not been engaged in stressful activity. Dr. Archie explained:
There are lots of people who have heart attacks, most common (sic) occurred with heart attack is in the early morning hours when people are waking up and stuff like that. Most times they’re asleep when that occurs. They wake up with chest pain so I can’t say with any degree of certainty that had he not engaged in any stressful activity, he would not have had a heart attack.
Dr. Archie also could not say the inverse with certainty, namely that Mr. Costin would have had a heart attack even if he had not been engaged in stressful activity. While Dr. Archie viewed the heart attack as temporally related to Mr. Costin’s work activities, he did not necessarily view the relationship as one of causation. Dr. Archie explained:
I’m not saying with certainty that the events of the day led to his MI. What I am saying is that certainly the events of the day could have and with high probability led to him having a heart attack.
Dr. Clement Eiswirth, an internist with a specialty in cardiology, examined in detail Mr. Costin’s medical records and concluded that Mr. Costin “probably had an arrhythmia that was provoked or occurred at the time of his work that resulted in his heart stopping_” Testifying by deposition, Dr. Eiswirth noted that Mr. Costin’s medical records showed cardiomegaly, or enlargement of the heart, as early as September 1994. When asked whether Mr. Costin’s work stress rather than some other stress or pre-existing condition was the predominant or overwhelming cause of his heart attack and sudden death, Dr. Eis-wirth responded, “I think it’s much more likely than not that his problem arose because of his underlying cardiac disease and not work stress.” Additionally, Dr. Eis-wirth concluded that Mr. Costin’s pre-ex-isting condition was the predominant and major |4cause of his injury. Dr. Eiswirth explained that from his review of the records, it did not seem likely that Mr. Costin experienced any major unexpected physical exertion on his job that would have resulted in the stress itself provoking a sudden arrhythmia that he otherwise would not have had. Dr. Eiswirth went on to explain that Mr. Costin experienced sudden cardiac death, a condition generally associated with patients with severe underlying cardiac disease. According to Dr. Eiswirth, sudden cardiac death is associated with severe underlying prevessel coronary artery disease 80 to 90 percent of the time; sudden cardiac death does not happen to people with normal hearts. When *404 asked for his opinion as to whether Mr. Costin would have experienced the same arrhythmia even if he had not been involved in any physical exertion, Dr. Eis-wirth answered:
I can’t tell you that it would or that it would not have. Sudden cardiac death, which is what I believe the man experienced, as a cause of death in cardiomyo-pathy patients, which I think he had, is a very common — it counts for half of all deaths that occur suddenly and it just occurs. We know from exercise literature and rehab programs, things like that, that physical exertion per se does not necessarily cause arrhythmia to occur. If it did, you wouldn’t be doing exercise rehab programs and things for heart disease because it does not necessarily cause it to happen. An arrhythmia is an electrical instability pattern that just suddenly occurs out of the blue and often times there is no provoking incident.
After reviewing the deposition testimony and hearing all of the evidence, the workers’ compensation judge (“WCJ”) rejected Mrs. Costin’s claim for death benefits. The WCJ found that there was no proof that Mr. Costin was engaged in extraordinary or unusual work activities and that the predominant and major cause of Mr. Costin’s death was not physical work stress or exertion. Mrs. Costin now appeals the WCJ’s judgment.
DISCUSSION
If an employee receives a personal injury by an accident arising out of and in the course of his employment, the employer is required to pay compensation benefits. La. R.S. 23:1031 A; Bandy v. International Paper Co., 29,085 (La.App. gdR Cir.2/26/97), 690 So.2d 902, writ denied, 97-1101 (La.6/20/97), 695 So.2d 1354. In cases in which an employee suffers a heart-related or perivascular injury, the claim for benefits is governed by La. R.S. 23:1021(7)(e), which provides:
Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or pre-existing condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
Both prongs of the test set forth in La. R.S. 23:1021(7)(e) must be satisfied for the claimant to prevail.
The “clear and convincing” standard of proof required by La. R.S. 23:1021(7)(e) places a heavier burden on the claimant than the usual “preponderance of the evidence” standard in civil cases, but it is less burdensome than the “beyond a reasonable doubt” standard in criminal cases. Johnson v. Breck Const. Co., 32,311 (La.App.2d Cir.9/22/99), 743 So.2d 296; Traweek v. City of West Monroe, 30,571 (La.App.2d Cir.5/13/98), 713 So.2d 655, writ denied, 98-1936 (La.11/6/98), 727 So.2d 449. Proof by clear and convincing evidence means that the existence of the disputed fact is highly probable, that is, much more probable than its nonexistence. Bank of Winnfield and Trust Company v. Collins, 31,473 (La.App.2d Cir.2/24/99), 736 So.2d 263.
The “manifest error” standard governs our review of the WCJ’s factual findings. Doucet v. Baker Hughes Production Tools, 93-3087 (La.3/11/94), 635 So.2d 166; Smith v. Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129. At issue is not whether the WCJ was right or wrong, but whether the factual conclu *405 sion was reasonable. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993)s. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id.
Even if we consider that Mr. Costin was subject to extraordinary or unusual work stress on the day of his injury and death, we do not believe, based on the medical evidence presented, that the WCJ’s determination that Mrs. Costin failed to prove her claim by clear and convincing evidence is manifestly erroneous or clearly wrong. To prevail on a claim for compensation resulting from heart-related or perivascular injury, the claimant is required to prove by clear and convincing evidence that physical work stress or exertion was the predominant and major cause of the injury. La. R.S. 23:1021(7)(e)(ii). The claimant’s case does not fail simply because the medical expert cannot definitively state what the primary cause of the heart attack was. Harold v. La Belle Maison Apartments, 94-0889 (La.10/17/94), 643 So.2d 752. Additionally, La. R.S. 23:1021(7)(e) is not to be construed to preclude recovery of benefits simply because the claimant suffers from previously unknown but undoubtedly existent coronary artery disease. Id.
In Harold, supra, the claimant met the burden of proving the causal connection between the heart attack she sustained and the extraordinary physical labor she performed the day of the injury. The claimant, who was employed as a maintenance worker and performed heavy physical labor, began to experience severe chest and back pains while performing outdoor yard maintenance. When the claimant reported her illness to her supervisor, the supervisor issued her additional work orders. The claimant completed the work orders while in pain and thereafter collapsed at her own apartment. Prior to the heart attack, the claimant had experienced no symptoms of cardiac difficulties and had not even missed a day of work due to illness. The claimant’s family had a history of heart disease and the claimant was a smoker; however, she had no other risk factors associated with heart disease, such as high blood pressure, obesity, or diabetes. It was ^determined after-the-fact that the claimant had significant blockage in her arteries, but this factor alone was not sufficient to deny recovery. Even though it was unclear from the evidence at what point physical work stress caused the onset of claimant’s heart attack, the evidence did establish that the delay in receiving medical treatment from the time of the onset of pain combined with the continuation of work while in pain was the predominant and major cause of the claimant’s heart-related injuries.
Unlike the claimant in Harold, supra, Mr. Costin suffered from documented and serious high blood pressure and diabetes. Moreover, Dr. Eiswirth testified that Mr. Costin’s medical records reflected that these conditions were “uncontrolled” by medication; at a clinic visit on May 30, 1995, Mr. Costin’s blood pressure was “230 over 104, extremely high.” Later blood pressure readings were lower but remained high. Blood sugar readings were also reported as “extremely high.” The failure to control blood pressure by medication has been found unimportant under particular facts.[1] However, in this case, Dr. Archie did not indicate that these conditions were not substantial factors in Mr. Costin’s heart failure. Although Mr. Cos-tin’s heart failure was temporally related to his balancing of the manhole cover, nei *406 ther Dr. Archie nor Dr. Eiswirth drew a clear and convincing causal connection between any physical stress experienced by Mr. Costin and the injury he suffered. Dr. Archie did state that “the events of the day could have and with high probability led” to Mr. Costin’s having a heart attack. However, Dr. Archie was also clear in indicating that he was not drawing a causal connection. Neither doctor could say that Mr. Costin would not have had a heart attack but for any physical stress he | ^endured that day. Dr. Eiswirth reported that the type of heart injury Mr. Costin suffered — arrhythmia—was not ordinarily produced by physical stress. Instead, Dr. Eiswirth primarily related it to Mr. Cos-tin’s long-standing heart problems.
Considering Mr. Costin’s medical history and the medical testimony presented, we find the WCJ’s determination that the claimant failed to prove by clear and convincing evidence that physical work stress, rather than a pre-existing condition, was the predominant and major cause of Mr. Costin’s heart failure to be reasonable and not clearly wrong. Accordingly, we must affirm the WCJ’s judgment denying Mrs. Costin’s claim for compensation benefits.
CONCLUSION
For the above reasons, the judgment appealed from is affirmed at appellant’s cost.
AFFIRMED.
BROWN, J., dissents with written reasons.

. See Hughes v. Carroll Timber Co., 96-0031 (La.App. 1st Cir. 10/1/96), 694 So.2d 331, wherein the claimant with a history of hypertension and inconsistency in taking medication suffered a stroke while performing two hours of physical labor at an increased rate of speed. Medical testimony indicated that strokes are caused by elevated blood pressure which may be due to stress, physical exercise and pain. Performance of physical labor at a rapid rate was determined to be the predominant cause of the stroke considering the claimant had performed heavy labor for years after his diagnosis with hypertension.