764 So.2d 1206 (2000)
Ronald G. GOODEN, Sr., Plaintiff-Appellant,
v.
B E & K CONSTRUCTION, Defendant-Appellee.
No. 33,457-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 2000.
*1207 Theus, Grisham, Davis & Leigh by J. Michael Hart, Monroe, Counsel for Appellant.
Breau & Lemoine by Andrew H. Meyers, Lafayette, Counsel for Appellee.
Before STEWART, GASKINS and DREW, JJ.
GASKINS, J.
The plaintiff, Ronald G. Gooden, Sr., appeals from a decision by a workers' compensation judge (WCJ) finding that he failed to show by clear and convincing evidence that his heart attack was attributable to extreme physical exertion on his job as a piping field engineer for the defendant, BE & K Construction (BE & K). We affirm.

FACTS
The defendant had a reputation for being a "fast track" company and stressed doing hard jobs in a short amount of time. The plaintiff began working at the company in 1985. He has a home in Columbia, Louisiana and has a trailer that he lives in near job sites. In 1996, the plaintiff was working for the defendant on the construction of a test facility for a pharmaceutical company in South Carolina. The facility *1208 was shut down during the construction process. In order to hasten the completion of the work, the plaintiff generally worked 12-14 hour days. When the project fell behind, the company held "tent meetings" at 6:00 a.m. and 6:00 p.m. daily and encouraged employees to rush the project along, at the risk of losing their jobs. The plaintiff claims that he was specifically under pressure and was often cursed at during these meetings. In an effort to speed the work along, the plaintiff frequently carried work materials up ladders and stairs himself. At that time, he began to experience some pain in his shoulder. He attributed this to bursitis.
After the South Carolina project was completed, the plaintiff worked briefly in California and in North Carolina. He then asked to be assigned to the Cabot facility in Franklin, Louisiana. The facility processed or manufactured carbon black by using gas fired reactors and high heat. BE & K was hired to create a duct work incinerator and process piping in order to reduce the amount of "tail gas" that was being emitted into the atmosphere. "Tail gas" is a byproduct of the carbon black process and can be lethal. Some of the work was conducted while the plant was operational. BE & K employees were equipped with gas monitors to protect against exposure to the tail gas. Also, thermal blankets were utilized to protect against the extremely high temperatures to which the workers were exposed. This project also fell behind schedule and the daily meetings were held, as they were in South Carolina. The facility in Franklin had five flights of stairs. The plaintiff frequently carried equipment up and down the stairs as he did in South Carolina. While the plant was temporarily shut down for a portion of the project, the plaintiff was also required to work 12-14 hour days.
On November 24, 1996, while carrying equipment up and down stairs, the plaintiff again experienced shoulder pain. He left work that afternoon and went to his trailer in Franklin. On November 25, the plaintiff returned to his home in Columbia, approximately 200 miles away. That night, the plaintiffs shoulder pain persisted and he slept on the couch. Around 2:00 a.m. on November 26, 1996, he awoke with severe pain. He was taken to the hospital and it was determined that he had suffered a mild heart attack. The 55-year-old plaintiff, who smoked two or more packs of cigarettes per day, had one coronary artery that was totally blocked and another that had a significant blockage. An angioplasty was attempted to clear the blockage, but was unsuccessful.
It appears that the plaintiff filed to obtain disability insurance benefits. In June 1997, the plaintiff's employment with BE & K was terminated due to a reduction in force. The plaintiff received a severance package and also applied for and received unemployment compensation benefits.
On October 3, 1997, the plaintiff filed a disputed claim for workers' compensation benefits, claiming that the heart attack was precipitated by his work for the defendant. A motion for summary judgment filed by BE & K Construction was denied on June 7, 1999.
After presentation of the plaintiff's case before the Office of Workers' Compensation on August 12, 1999, the defendant moved for an involuntary dismissal, arguing that the plaintiff had failed to carry his burden of proving that his heart condition was covered by the workers' compensation provisions. The WCJ granted the motion for involuntary dismissal. She found that the plaintiff did not show that the physical work stress at the Cabot plant was extraordinary or unusual in comparison to the stress or exertion of the average employee in that occupation. The WCJ also found that, based upon the testimony of the plaintiffs treating physician, the physical stress of the job was not the predominant cause of the heart attack.
The plaintiff appealed, arguing that the WCJ erred in granting BE & K's motion *1209 for involuntary dismissal. The plaintiff contends that the WCJ erred in concluding that he had not satisfied his statutory burden of proof under both prongs of La. R.S. 23:1021(7)(e) to show that his heart attack was compensable under the workers' compensation provisions. These arguments are without merit.

LEGAL PRINCIPLES
La. C.C.P. art. 1672(B) provides that in an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party may move for a dismissal on the grounds that upon the facts and law, the plaintiff has failed to show a right to relief. Keller v. Odin Management, Inc., 30,682, 31,305 (La.App.2d Cir.8/19/98), 716 So.2d 962, writ denied, 98-2434 (La.1/8/99), 734 So.2d 1228. The trial judge is required to evaluate the evidence and render a decision in accord with the applicable burden of proof. Cupples v. Pruitt, 32,786 (La.App.2d Cir.3/1/00), 754 So.2d 328; Silva v. Calk, 30,085 (La.App.2d Cir.12/10/97), 708 So.2d 418. A dismissal based on La. C.C.P. art. 1672(B) should not be reversed in the absence of manifest error or unless it is clearly wrong. Keller v. Odin Management, Inc., supra; Silva v. Calk, supra; Clifton v. Coleman, 32,612 (La.App.2d Cir.12/23/99), 748 So.2d 1263, writ denied, XXXX-XXXX (La.3/24/00), 758 So.2d 151.
If an employee receives a personal injury by an accident arising out of and in the course of his employment, the employer is required to pay compensation benefits. La. R.S. 23:1031(A); Costin v. LaSalle Testers, 32,632 (La.App.2d Cir.3/1/00), 754 So.2d 401, writ denied, XXXX-XXXX (La.5/5/00), 761 So.2d 552. In cases in which an employee suffers a heart-related or perivascular injury, the claim for benefits is governed by La. R.S. 23:1021(7)(e) which provides:
(e) Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heartrelated or perivascular injury, illness, or death.
Both prongs of the test set forth in La. R.S. 23:1021(7)(e) must be satisfied for the claimant to prevail. The first prong of the statute requires the plaintiff to prove by clear and convincing evidence that the physical work stress he experienced was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation. "Extraordinary" is defined as "going beyond what is usual, regular, or customary." "Unusual" is defined as "not usual" and "uncommon;" that is, not in accordance with usage, custom, or habit. These terms require the plaintiff to prove that his physical work stress went beyond what was usual, regular, or customary in relation to the average employee in that occupation. Harold v. La Belle Maison Apartments, 94-0889 (La.10/17/94), 643 So.2d 752. In determining this question of fact, we look to whether an ordinary reasonable person of usual sensibilities would find the stress "extraordinary." Johnson v. Breck Construction Company, 32,311 (La.App.2d Cir.9/22/99), 743 So.2d 296.
The second prong of the statute requires the plaintiff to prove by clear and convincing evidence that his physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of his heart attack. Harold v. La Belle Maison Apartments, supra.
*1210 The "clear and convincing" standard of proof as required by the statute is a heavier burden of proof than the usual civil burden of proof, "preponderance of the evidence," but is less burdensome than the criminal standard of proof, "beyond a reasonable doubt." Johnson v. Breck Construction Company, supra; Traweek v. City of West Monroe, 30,571 (La.App.2d Cir.5/13/98), 713 So.2d 655, writ denied, 98-1936 (La.11/6/98), 727 So.2d 449. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Johnson v. Breck Construction Company, supra.
The statute was amended in 1989 to change the burden of proof regarding perivascular injuries. The purpose of the statute's amendment was to exclude from coverage employees who just happen to suffer perivascular injuries at work. The burden of proof of causation was heightened from preponderance of the evidence to clear and convincing evidence because heart attacks and strokes are ordinarily the result of natural physiological causes, instead of the result of trauma or particular effort, making the identification of the heart attack or stroke as a work injury more difficult. Thus, when the worker contributes some personal risk, the employment must be clearly shown to have increased the risk of injury before the employee can be compensated. Laumann v. Dulac Shipyard, Inc., 95-2269 (La.App. 1st Cir. 6/28/96), 676 So.2d 823, writ denied, 96-1986 (La.1/10/97), 685 So.2d 142. The statutory requirement that the stress be extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in the occupation relates to the work actually being performed at the time of the injury or death. Laumann v. Dulac Shipyard, Inc., supra.
We review the findings of fact by a WCJ under the "manifest error" standard. Johnson v. Breck Construction Company, supra. The issue is not whether the WCJ was right or wrong, but whether the factual conclusion was reasonable. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La. 1993).

DISCUSSION
Regarding La. R.S. 23:1021(7)(e)(i), the plaintiff contends that he did, in fact, establish that the Cabot job was unusual and extraordinary from the average pipe engineering job. The plaintiff argues that the statute does not require that the physical work stress on the job be unusual and extraordinary compared to other piping supervisors employed by BE & K, nor does it require that the physical work stress on the job be unusual and extraordinary in comparison to the physical work stress on a normal BE & K job. The statute requires only that the plaintiff show that the physical work stress on the job is unusual and extraordinary compared to average employees in that occupation. According to the plaintiff, the witnesses in this case established by uncontroverted testimony that the Cabot job was behind schedule and required longer hours and more physical activity to be performed by the plaintiff than the usual construction job. This included climbing numerous flights of stairs, ladders and scaffolds, along with carrying equipment from site to site in the facility. The plaintiff claimed the testimony showed that the conditions at the Cabot job were extreme and included working in heat at times in excess of 115 degrees, requiring employees to wrap themselves in thermal blankets to protect their bodies from burning; working around lethal toxic gases which required all employees to carry gas monitors and scramble for their lives when the monitor alarm sounded; working in conditions so extreme that the safety of the operation was compromised to the point that the operation had to be shut down and safety seminars held for an entire day; and working while the plant was in a shutdown mode which necessarily required longer *1211 hours and expeditious performance of the various job functions. The plaintiff further asserts that the supervisors at the Cabot facility were intent on maintaining the reputation of BE & K as a "fast track" company, and would yell and scream at the plaintiff at tent meetings held in the early morning and in the early evening, every day. The supervisors would also threaten his job if he did not hurry up and get the company back on schedule. The plaintiff also introduced a letter from Randy Evans, the overall boss/construction manager, in which Mr. Evans stated that he knew the Cabot job was not an easy one.
At trial the plaintiff testified that the Cabot job was very hot and he had to climb stairs at least five times a day, sometimes carrying heavy equipment. The plaintiff also testified that he worked 85 hours per week, seven days per week. The plaintiff stated that there were a high number of injuries on the Cabot job and BE & K's operation was shut down for an entire day to have a safety meeting. According to the plaintiff, this had never occurred on a job before.
Troy Gene Wyles, a former BE & K employee who worked with the plaintiff testified as to the hot conditions and long hours at the Cabot job. He stated that the plaintiff had to carry a lot of equipment, unlike other piping engineers. Mr. Wyles also stated that most piping engineers did not climb scaffolding as the plaintiff did, but rather would stand on the ground below and shine a flashlight up to the piping above.
The record shows that the plaintiff's work for BE & K frequently involved rush jobs that were falling behind schedule, requiring him to work long hours and climb stairs and scaffolding, carrying heavy equipment. Although the evidence showed that the Cabot job was somewhat unique in the high temperatures and the threat from tail gas, the WCJ found that the plaintiff had not shown that the work stress on the Cabot job was extraordinary or unusual for the average employee in the plaintiff's occupation. We find that the WCJ did not err in this conclusion. However, even if the plaintiff had demonstrated that the work stress was extraordinary or unusual, he still was required to show that work stress was the predominant or major cause of his heart attack.
Regarding La. R.S. 23:1021(7)(e)(ii), the plaintiff argues that the WCJ erred in finding that he did not prove that the physical work stress or exertion was the predominant and major cause of his heart-related or perivascular injury, rather than some other source of stress or preexisting condition. The record showed that the 55-year-old plaintiff was a heavy smoker, did not exercise regularly, had high cholesterol and his father died at a fairly young age, possibly as a result of heart disease. The plaintiff's right coronary artery was completely occluded and there was significant blockage in the left artery. The plaintiff had been experiencing angina pains for about one year prior to the heart attack. The plaintiff contends that whether he had a prior heart disease or condition is not controlling. He asserts that if prior heart disease was controlling, then under virtually no circumstances could an employee recover workers' compensation benefits after a heart attack. According to the plaintiff, he had unstable angina that was worse when he exerted himself. Such exertion was necessary at his job due to the rushed nature of the work and the necessity of performing extra functions in order to get the job back on schedule. The plaintiff contends that prior to his heart attack, he only experienced angina pain while going up and down flights of stairs at work carrying heavy equipment and working in extremely hot conditions. The plaintiff asserts that, even though he had blockage of his heart arteries, he would not have suffered the heart attack on November 26, 1996 if he had not been physically exerting himself at the Cabot job. Therefore, the plaintiff contends that the WCJ should not have granted BE & K's motion for involuntary *1212 dismissal, finding that the plaintiff failed to establish a compensable heart attack under the workers' compensation provisions.
BE & K asserts that the plaintiffs heart attack was not attributable to his work. The defendant points out that the plaintiff left work on November 24, 1996, approximately 32 hours before the onset of the intense pain which sent him to the emergency room. According to the defendant, the plaintiff was asleep on his sofa at home, more than 200 miles from the job site when he awoke with intense shoulder and chest pains and sought medical treatment. The defendant contends that the plaintiff never told any supervisor at BE & K of shoulder pain at any of the job sites. Further, in a physician's statement on February 11, 1997, and an "Attending Physician's Statement of Disability" on April 24, 1997, the plaintiffs cardiologist stated that the plaintiffs condition was not due to injury or sickness arising out of employment.
The defendant argues that the plaintiff received 100% of his salary for three weeks while on sick leave. He then received 60% of his salary while on shortterm disability. After being released to return to work by his doctor on June 1, 1997, the plaintiff received 80% of his salary while on unassigned status. At that time, the plaintiff was subject to being called to a project anywhere in the country if one became available. After the plaintiff was laid off in late June 1997, he received unemployment compensation for six months and then asserted a claim for workers' compensation benefits. The defendant contends that the WCJ correctly granted its motion for involuntary dismissal. Based upon our review of the record, we find, as did the WCJ, that the plaintiff failed to show by clear and convincing evidence that work stress was the predominant and major cause of his heart attack.
At trial, Dr. P. Thomas Causey, Jr., the plaintiffs treating cardiologist, noted that the plaintiff had several positive risk factors for heart related problems. He had not seen a physician in 15 years, was a heavy smoker, had high cholesterol and the plaintiffs father was thought to have died of heart disease at a young age. In addition, the plaintiff was over 45 years old, which is also a risk factor. However, Dr. Causey testified that work was not an independent risk factor for coronary artery disease such as the plaintiff has. The plaintiff told the doctor that he had been having angina pains on physical exertion for approximately one year. The doctor stated that coronary artery disease does not develop overnight.
Dr. Causey stated that based upon the plaintiffs history and his examination of the plaintiff, the predominant and major cause of the plaintiffs heart attack was his cigarette abuse, high cholesterol and the development of coronary artery disease. According to Dr. Causey, physical stress from a job that the plaintiff had not performed for several days would not be a predominant and major cause of the heart attack. Dr. Causey also testified that, in filling out forms for the plaintiff to receive disability insurance benefits, he stated that the plaintiffs condition was not due to sickness or injury arising out of his employment.
The facts of this case are distinguishable for other cases in which workers' compensation benefits have been awarded for heart attacks. In Harold v. La Belle Maison Apartments, supra, the plaintiff, employed as a maintenance worker, had a heart attack at work, while performing heavy physical labor. After the onset of the heart attack, and after informing her employer that she was not well, the plaintiff was assigned the task of repairing a toilet and a dishwasher. The continued exertion caused more damage than might have ordinarily been sustained.
In McClendon v. Keith Hutchinson Logging, 96-2373 (La.App. 1st Cir. 11/7/97), 702 So.2d 1164, writ denied, 97-2872 (La.2/13/98), 706 So.2d 995, the plaintiff, a *1213 truck driver, had a heart attack while performing a difficult task not part of his usual, customary or regular duties. Also, the plaintiff's physician testified that there was a very high possibility that the physical exertion precipitated the heart attack.
In Oxley v. Sattler, 97-1299 (La.App. 3d Cir.2/18/98), 710 So.2d 261, writ denied, 98-1864 (La.4/23/99), 739 So.2d 183, the court found that the plaintiff sustained a perivascular injury which was compensable under the workers' compensation provisions. The plaintiff's medical expert testified that the plaintiff's vigorous physical labor aggravated his preexisting heart condition.
In Custis v. Whitaker Construction, 95-1110 (La.App. 3d Cir.1/31/96), 670 So.2d 339, writ denied, 96-0553 (La.4/19/96), 671 So.2d 920, a plaintiff who had a stroke at work was found to be entitled to workers' compensation benefits where the plaintiff was working under unusually hot and strenuous conditions. The plaintiff's doctor testified that work place exertion was more probably than not the predominant and major cause of the stroke.
In Debona v. Pawn, 94-430 (La.App. 3d Cir.11/2/94), 649 So.2d 449, writ denied, 94-2878 (La.1/27/95), 650 So.2d 242, the plaintiffs heart attack was compensable where the plaintiff had a heart attack while performing a task outside his normal duties and where medical testimony stated that the heart attack would not have occurred without the exertion.
In Coscino v. Louisiana State Boxing and Wrestling Commission, 97-2733 (La. App. 4th Cir. 9/9/98), 718 So.2d 1016, the decedent officiated at several boxing matches without taking a break. It was unusual to do so. During this activity, the decedent suffered a fatal heart attack. Medical experts stated that work was a contributing factor in the heart attack. Workers' compensation death benefits were awarded.
In Morris v. Reve, Inc., 95-310 (La.App. 5th Cir. 10/18/95), 662 So.2d 525, writ denied, 95-3037 (La.2/16/96), 667 So.2d 1055, the worker was finishing concrete during the hottest part of the day. Working at that time of day was not usually done. The worker had a fatal heart attack. The physician stated that the worker would not have died of the heart attack but for the hot conditions.[1]
The facts of the present case are distinguishable from those in which heart attacks or perivascular injuries have been found to be compensable under the workers' compensation provisions. Here the plaintiff had significant risk factors not connected with his work. Unlike many of the cases in which workers' compensation benefits were awarded, the plaintiff did not have the sudden onset of symptoms. Rather, he had been experiencing angina pain for approximately one year before his heart attack. Also, the plaintiff did not have his heart attack at work, but rather it occurred a couple of days after the plaintiff had taken off work for the Thanksgiving holiday. We also note that on applications for disability insurance benefits, the plaintiff himself stated that the heart attack was not work related. Further, until the filing of the disputed claim for workers' compensation benefits, the plaintiff never *1214 informed supervisory personnel at BE & K that he claimed that the heart attack was caused by work. However, most significantly, the plaintiff's treating physician did not attribute exertion at work as a predominant cause of the heart attack. Based upon our review of the jurisprudence, we find no case in which a heart attack was found to be compensable when the medical evidence did not establish that the work stress was the predominant and major cause of the heart attack.
Based upon the record before us, we conclude that the plaintiff's heart attack was the result of natural physiological causes and was not the result of trauma or a particular effort at work. The heart attack experienced by the plaintiff is the type of illness that was intended to be excluded by the 1989 amendment to La. R.S. 23:1021(7)(e). Therefore, the WCJ did not err in finding, at the close of the plaintiff's case, that he had not carried his burden of proving entitlement to workers' compensation benefits by clear and convincing evidence and accordingly, granting the defendant's motion for involuntary dismissal.

CONCLUSION
For the reasons stated above, we affirm the decision of the WCJ, granting the motion for involuntary dismissal in favor of the defendant, BE & K Construction, and rejecting the demands of the plaintiff, Ronald G. Gooden, Sr., for workers' compensation benefits. Costs in this court are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] See and compare the following cases in which heart-related or perivascular injuries were found not to be compensable work related injuries: Laumann v. Dulac Shipyard, Inc., supra; Hunt v. Milton J. Womack, 616 So.2d 759 (La.App. 1st Cir.1993), writ denied, 623 So.2d 1309 (La.1993); Costin v. LaSalle Testers, supra; Johnson v. Breck Construction, supra; Gray v. Mounir, 99-538 (La.App. 3d Cir.11/3/99), 746 So.2d 746; Walker v. Distran Steel Fabrication, 97-1128 (La.App. 3d Cir.2/4/98), 705 So.2d 1299; Estate of St. Andre v. Frey, 96-711 (La.App. 3d Cir.12/18/96), 685 So.2d 604; Rareshide v. Mobil Oil Corporation, 97-1376 (La.App. 4th Cir. 4/22/98), 719 So.2d 494, writ denied, 98-1595 (La.10/9/98), 726 So.2d 28; Votano v. Tulane and Broad Exxon, Inc., 95-1064 (La.App. 4th Cir. 11/30/95), 667 So.2d 1117, writ denied, 96-0768 (La.5/3/96), 672 So.2d 687; Harge v. MCC Specialty Contractors, Inc., 94-790 (La.App. 5th Cir. 2/15/95), 650 So.2d 425, writ denied, 95-0611 (La.4/21/95), 653 So.2d 574.