511 So.2d 78 (1987)
Jerry DOGA, Plaintiff-Appellant,
v.
SOUTHERN FARM BUREAU INSURANCE COMPANY, et al., Defendants-Appellees.
No. 86-777.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
Alex Chapman, Ville Platte, for plaintiff-appellant.
Fruge & Vidrine, Richard W. Vidrine, Ville Platte, for defendants-appellees.
Before LABORDE and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge Pro Tem.
Plaintiff, Jerry Doga, a rural mail carrier for the United States Postal Service (Postal Service), filed suit against Louisiana Farm Bureau Mutual Insurance Company (defendant),[1] the liability insurer of a farm tractor which collided with plaintiff's vehicle while plaintiff was delivering mail on June 4, 1983, and against Government Employees Insurance Company (GEICO), plaintiff's underinsured motorist carrier, for his personal injuries as a result of the accident. Plaintiff thereafter dismissed GEICO. Subsequently, the remaining defendant insurance company filed a peremptory exception of no right of action, which was based on an assignment of plaintiff's right of action to the Postal Service, his employer, and on defendant's settlement draft negotiated by plaintiff which purportedly settled plaintiff's personal injury action. Defendant's exception was sustained by the trial court, and judgment was rendered accordingly, dismissing plaintiff's claim at his cost. Plaintiff now appeals from the trial court's judgment dismissing his suit.
*79 On June 4, 1983 plaintiff was delivering mail on his rural mail route in Evangeline Parish when a farm tractor driven by the nine-year-old son of Ivan Fontenot collided with plaintiff's vehicle, causing damage to plaintiff's neck, head and shoulder. Plaintiff filed a claim for worker's compensation as a result of the accident.
On June 7, 1983, plaintiff executed an Assignment of Claim to the Postal Service, pursuant to 5 U.S.C. § 8101-50, assigning all of his right, title and interest in any claim, demand, or cause of action against any person as a result of the June 4, 1983 accident. On September 9, 1983, defendant issued a draft payable to the order of plaintiff in the amount of $1,065.00, on the front of which draft was the statement: "In full payment for any and all claims." Also attached to the draft was a form for Final Release and Settlement of Claim. Plaintiff did not execute this release, left it unsigned and wrote the following: "I reserve the rights of my collision insurance carrier. I reserve the rights of my w. c. [workmen's compensation] carrier." Plaintiff signed the draft and, on February 28, 1984, deposited it in his personal bank account.
On March 20, 1984, Mr. Glendy Thibodaux, a safety/injury compensation specialist for the Postal Service, attempted to settle the claim arising from the accident, pursuant to plaintiff's assignment, as evidenced by a letter from Thibodaux to Mr. Herman J. LeBleu, a claims manager for defendant. In reply to Thibodaux's letter, LeBleu advised him that defendant had already settled with plaintiff on his personal injury claim, but that they were willing to reimburse the Postal Service for $580.00 which the Postal Service had paid for medical bills and continuation of pay. The record does not disclose whether the Postal Service ever accepted defendant's offer of reimbursement.
On May 24, 1984, plaintiff filed suit against defendant and GEICO, plaintiff's underinsured motorist carrier; however, plaintiff later dismissed GEICO. Defendant then filed a peremptory exception of no right of action. The basis of defendant's exception was, first, that, since plaintiff had assigned all right, title and interest in the lawsuit arising from his accident to the Postal Service, plaintiff had no right to file this suit. Second, defendant alleged that plaintiff had fully settled any cause of action he had as a result of the accident by signing and negotiating defendant's draft in the amount of $1,065.00; that such draft was in full payment of any and all claims as a result of the accident; and, that negotiation of the draft constituted full compromise and settlement of plaintiff's claim.
At the hearing on the exception on April 1, 1986, a note of evidence was taken. Defendant presented testimonial and documentary evidence tending to establish that the understanding between plaintiff, his employer, the Postal Service, and the defendant was that the $1,065.00 draft was intended as full settlement of plaintiff's claim arising from the accident. LeBleu, the claims manager for defendant, testified at the hearing that the plaintiff, Glendy Thibodaux, the Postal Service's injury specialist, and himself understood that the $1,065.00 draft was for full settlement of plaintiff's claim. Lebleu further testified that he recalled that the amount of the draft was for the total of $100.00 for plaintiff's collision deductible, $215.00 for auto rental and $750.00 for plaintiff's pain and suffering. Floyd J. Tassin, claims adjuster for defendant who prepared the $1,065.00 check, testified at the hearing and corroborated the testimony of Lebleu.
Plaintiff's presentation of evidence in opposition to defendant's exception revealed opposing facts. Plaintiff testified that the $750.00 amount, which was included in the $1,065.00 draft and which defendant contended was for pain and suffering, was actually for "personal inconvenience." Lebleu, however, on reexamination, testified that he had never used the term "personal inconvenience" in his 26 years of settling claims. Plaintiff testified that he never intended to settle his personal injury claim with defendant and that he only signed the $1,065.00 draft after checking with Glendy Thibodaux. In a memo dated February 24, 1984 Thibodaux told plaintiff that the $1,065.00 draft covered "all claims for property damage. Not personal injury." *80 Thibodaux, who also testified at the hearing, corroborated plaintiff's version of the draft as being for personal inconvenience and car rental and not for pain and suffering. However, this statement, as noted by counsel during Thibodaux's cross-examination, is inconsistent with Thibodaux's prior statement in the February 24, 1984 memo that the draft was for settlement of property damage. In fact, plaintiff had previously settled his property damage claim with GEICO, plaintiff's underinsured motorist and collision insurer.
Following the hearing the trial judge granted defendant's exception of no right of action "regarding plaintiff's assignment of claim and full settlement," and rendered judgment dismissing plaintiff's suit.
One basis for the exception of no right of action filed by defendant is their contention that plaintiff entered into a settlement with defendant for his personal injury claim arising from the accident and that such settlement acted as a transaction or compromise of plaintiff's claim. While plaintiff correctly notes that a transaction or compromise is properly alleged by an exception of res judicata, he concedes in his brief that improper labeling does not defeat the exception. LSA-C.C.P. art. 922, comment 2; Thompson v. Bank of New Orleans, Etc., 422 So.2d 230 (La.App. 4 Cir.1982); Smith v. Smith, 341 So.2d 1147 (La.App. 1 Cir. 1976), appeal after remand, 357 So.2d 873 (La.App. 1 Cir.1978). Accordingly, we will treat defendant's exception, insofar as it alleges a transaction or compromise, as an exception of res judicata.
La.C.C. art. 3071 defines transaction or compromise as:
"an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing."
The agreement contemplated by this article requires that there be a meeting of the minds between the parties as to the understanding that payment is tendered in full settlement. McClelland v. Security Indus. Ins. Co., 426 So.2d 665 (La.App. 1 Cir.1982), writ den., 430 So.2d 94 (La.1982). A contract of compromise must be in writing to be enforceable. LSA-C.C. art. 3071; Roundtree v. Technical Welding & Fabrication Co., 364 So.2d 1325 (La.App. 4 Cir. 1978), writ den., 367 So.2d 389 (La.1979). A draft may serve as a written compromise where it recites that it is in full payment for all claims as a result of an accident and the draft is endorsed and negotiated. Audubon Ins. Co. v. Farr, 453 So.2d 232 (La.1984); Van-Trow Olds Cadillac, Inc. v. Dodwell, 229 So.2d 154 (La.App. 2 Cir. 1969). Whether a draft has been tendered and accepted as full payment is a question of fact. Cowley Corp. v. Shreveport Packing Co., Inc. of Kansas, 440 So.2d 1345 (La.App. 2 Cir.1983), writ den., 444 So.2d 122 (La.1984).
In the instant case, the record clearly reveals that the plaintiff endorsed and negotiated the draft for $1,065.00 and that, at the time plaintiff negotiated the draft, it contained the date of the accident and the statement "In full payment for any and all claims." Gloria Ardoin, an officer at Evangeline Parish Bank testifying at the hearing on the exception, produced a copy of the $1,065.00 draft which was taken at the time of plaintiff's deposit and which contained the statement. The only fact issue remaining as to settlement is, therefore, whether the trial court was clearly wrong in finding as a fact that there was a meeting of the minds between plaintiff and defendant that the draft was a final settlement of plaintiff's personal injury claim.
Lebleu, defendant's claims manager, testified that the draft was intended and understood by all parties as a final settlement for plaintiff's personal injury claim as a result of the accident. The draft contained the statement, "In full payment for any and all claims," and attached to the draft was a final release form for settlement of plaintiff's claim. Lebleu testified that he explained to Thibodaux, the Postal Service injury specialist, that the draft was for full and final settlement. Tassin, defendant's claims adjuster, testified that he explained to plaintiff that the draft was in full settlement *81 for any and all claims. After negotiating settlement for his claim with Tassin, plaintiff signed defendant's draft and deposited it in his personal bank account. From our review of the record, we do not find the trial court was clearly wrong in concluding that both plaintiff and defendant intended, at the time plaintiff signed and negotiated defendant's draft, to settle plaintiff's claim in full. The issue depends largely on the credibility of the witnesses, which the trial judge is better qualified to determine.
Although plaintiff did not sign and return the settlement release form attached to the draft, this omission does not necessarily amount to a manifestation of his lack of intent to settle his personal injury claim. Plaintiff stipulated on the settlement release form his intention to reserve the rights of both his worker's compensation carrier and his collision insurance carrier. He did not reserve his own rights. If plaintiff intended to reserve his rights to pursue his personal injury claim, it is reasonable to believe that he would have manifested his intention to do so by expressing this intention on the settlement release form.
Having found that the trial court did not manifestly err in sustaining defendant's exception and dismissing plaintiff's suit based on a finding that plaintiff properly settled his personal injury claim against defendant, we find it unnecessary to address plaintiff's remaining assignment of error that the trial court erred in sustaining defendant's peremptory exception based on a finding that plaintiff assigned his claim to his employer, the Postal Service.
For the foregoing reasons, the judgment appealed is affirmed. All costs of this appeal are taxed to the plaintiff-appellant.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Louisiana Farm Bureau Mutual Insurance Company was erroneously referred to in plaintiff's original petition as Southern Farm Bureau Insurance Company.