540 So.2d 573 (1989)
Joy Veillon MURPHY, Plaintiff-Appellant,
v.
Joseph L. HOFFPAUIR, Point Coupee Lumber Co. & United States Fidelity & Guaranty Company, Defendant-Appellee.
No. 87-1372.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
Rehearing Denied April 12, 1989.
Writ Denied June 2, 1989.
*574 Joseph A. Koury, Lafayette, for plaintiff-appellant.
McBride, Foret, Rozas & Leonard, Norman P. Foret, Lafayette, for defendant-appellee.
Before GUIDRY, LABORDE, and KING, Judges.
LABORDE, Judge.
Plaintiff, Joy Veillon Murphy, was injured in an automobile accident on November 12, 1985. On July 8, 1986, Murphy filed a petition for damages against Joseph L. Hoffpauir, the driver of the other vehicle involved in the accident; Point Coupee Lumber Co., the owner of that vehicle and employer of Hoffpauir; and United States Fidelity & Guaranty Company (USF & G), the insurer of the vehicle.[1] U.S.F. & G. subsequently filed a Motion for Summary judgment claiming that plaintiff had signed a release, and thus, the matter was res judicata. This motion was denied. On September 2, 1987, defendants filed a peremptory exception of res judicata. The trial court granted the exception and dismissed Murphy's suit. She now appeals. We affirm.

FACTS
It is undisputed that Hoffpauir was at fault in the accident. Soon after the accident, Murphy related the details of the accident to Jackie Wallace, an adjuster for USF & G. USF & G paid Murphy $3,062.21 for property damages to her car and $1,171.65 for a rental vehicle used by Murphy. Murphy later telephoned Wallace allegedly requesting compensation for medical bills (at the time the bills totalled $477.06). Wallace informed Murphy that USF & G was willing to pay $3,000.00.
On January 27, 1986, Murphy wrote the following letter to Wallace:
 "January 27, 1986
Jackie,
On Friday, January 24, I was able to pick up my car. I contacted Snappy Rental so they could pick up the rental car.
After considering the offer of 3,000 for this unfortunate experience, I feel that a sum of 4,000 would better compensate for the problems I've had.
After you have considered this request I look forward to hearing from you.
 Sincerely,
 Joy Murphy"
On January 30, 1986, Wallace sent Murphy a check for $4,000.00 and a release form. The back of the check also contained a release. Murphy did not sign the release form, but did endorse and deposit the check. The release on the back of the check read as follows:
 Murphy subsequently filed her petition seeking $325,000.00 in damages. USF & G relied on the signed release as the basis for the exception of res judicata. The trial court granted the exception. On appeal plaintiff contends that the trial court erroneously *575 supplied and granted the plea of res judicata.

PLEA OF RES JUDICATA
USF & G filed a Motion for Summary Judgment on September 29, 1986, urging that the matter was res judicata based upon the release signed by Murphy. This motion was denied on November 24, 1986. Trial was scheduled for September 1, 1987, and a jury was selected on that day. Apparently on the same day a conference was held in the trial judge's chambers where he suggested that defendant should have filed a peremptory exception of res judicata. Defendant then amended its answer to reflect that it intended to use the defense of res judicata. The following day defendant filed a peremptory exception of res judicata which was also heard and granted by the trial court on that day.[2]
Murphy contends that the trial judge's suggestion that defendant should have filed a peremptory exception of res judicata amounts to the court providing defendant with that plea. La.C.C.P. art. 927 provides that the court may not supply a plea of prescription or res judicata which instead, must be specifically pleaded.
In Doga v. Southern Farm Bureau Insurance Co., 511 So.2d 78 (La.App. 3d Cir. 1987), this court was faced with a situation similar to the present. In Doga, the plaintiff (a mailman) was injured when his vehicle collided with a tractor. The defendant-insurer (the liability insurer of the tractor) issued a draft to plaintiff. The draft contained a release on its face and a separate release document was also sent to plaintiff. Plaintiff did not sign the release document. He did endorse the draft, but added language to the release on the draft indicating that he did not intend to release any claims against his collision insurer or any worker's compensation claim. He subsequently sued the defendant. Defendant filed a peremptory exception of no right of action. Included in the exception was the defense that plaintiff had previously settled with defendant. The trial court granted the exception.
On appeal, we noted that the defense of transaction or compromise should have been asserted by an exception of res judicata. We, however, recognized that improper labeling does not defeat the exception. We thus treated defendant's exception asserting transaction or compromise as an exception of res judicata. After considering the evidence, we affirmed the trial court's grant of the exception based upon the fact that plaintiff had endorsed the check containing the release.
Similarly, in the present case, defendant recognized that the defense of res judicata based upon the signed draft containing the release was available to it. Defendant filed a Motion for Summary Judgment asserting that the matter was res judicata.[3] The trial court denied this motion, but subsequently granted defendant's peremptory exception of res judicata. We do not find that the trial judge's actions were improper.[4] The first ruling of the court denying defendant's Motion for Summary Judgment was merely an interlocutory order. Thus, the court has the right to set aside that prior decree and to sustain the exception, upon finding that it erred in overruling it. R.G. Claitor's Realty v. Juban, 391 So.2d 394 (La.1980). Accordingly, in the instant case, the denial of defendant's Motion for Summary Judgment did not preclude the trial court from later reversing itself and sustaining the exception of res judicata.

GRANT OF EXCEPTION
Murphy next argues that the trial court erred in granting the exception of res judicata. She claims that her conversation with the adjuster indicated that the draft *576 was only intended to cover medical expenses. She contends that the adjuster told her that it was the policy of USF & G to forward $1,000.00 per month on a claim until the claim is settled. Murphy also contends that she understood the release and draft to be two independent instruments. She claims that she understood the release and her intention "was to hold onto this release until I felt that I was through with any medical bills or any physical problems or problems related with being able to work." As to the draft, Murphy claims that she never read the release on its back. She claims that she saw the words "Notice to Banks" and believed that this language did not concern her, so she simply signed the draft without reading its provisions. Thus plaintiff contends that she did not intend to release all claims against defendant and the exception of res judicata was improperly granted by the trial judge.
Defendant claims that the release language on the back of the draft is clear and unambiguous. Plaintiff endorsed the draft and thus should be bound by the release. Defendant also contends that the insurer never followed the practice of paying a claimant $1,000.00 a month until settlement, nor did it make such representations to plaintiff. Defendant instead argues that the $4,000.00 forwarded to plaintiff was intended to cover her medical bills ($477.06) and the remainder was to compensate her for pain and suffering. Defendant contends that when plaintiff spoke with the adjuster, she stated that she may see a doctor once more.[5]
In Boudreaux v. Leblanc, 517 So.2d 911 (La.App. 3d Cir.1987), this court summarized the law applicable to releases and compromises. We stated:
"Under Civil Code Article 3071 a transaction or compromise is an agreement between two or more persons, who adjust their differences by mutual consent for preventing or putting an end to a lawsuit.
The scope of such an agreement is regulated by Civil Code Article 3073, which states:
Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
The renunciation, which is made therein to all rights, claims, and pretensions, extends only to what relates to the differences on which the transaction arises.
The effect of a compromise between the parties is stated in Civil Code Article 3078:
Transactions have, between the interested parties, a force equal to the authority of things adjudged. They cannot be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.
Civil Code Article 3079 further provides:
A transaction may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute, it may likewise be rescinded in the cases where there exists fraud or violence.
Also, whether parties mutually consented to compromise can only be determined by examining the actions of the parties and the facts surrounding the asserted compromise.
The defense of compromise may be properly raised through the peremptory exception of res judicata." (citations omitted)
Id. at 913.
In Schmidt v. Doe, 514 So.2d 614 (La. App. 4th Cir.1987), the court stated:
"The party urging an exception of res judicata based on a compromise has the burden of proving by a preponderance of the evidence the elements of the compromise, including the parties' intention to compromise their differences. An endorsed draft can satisfy the requirements *577 of a written compromise, even without the formal release language. It is, nonetheless, up to the insurer to make clear and unequivocal the parties' mutual intention to compromise. Parol evidence is admissible to show error which may be the basis of rescinding a compromise." (citations omitted)
Id. at 616.
In Boudreaux, we noted that the defendant/insurer was not in the position to take advantage of the plaintiff. The plaintiff had a high school education and was employed as a supervisor. He had also negotiated with insurance companies previously. In the present matter, the plaintiff has a college degree and is employed as a school teacher. She was not at an intellectual disadvantage in negotiating with the insurer. Where literate and intelligent persons execute a release that is clear and unambiguous, they may not later have that release nullified, absent fraud, duress, or error. The failure to read a release is neither an acceptable defense nor a reasonable excuse. Thigpen v. Guarisco, 197 So.2d 904, 906 (La.App. 1st Cir. 1967).
The trial judge reviewed the evidence presented at the hearing of the exception and found that the defendant met its burden of proving a compromise by a preponderance of the evidence. The judge pointed out that plaintiff admitted to endorsing the draft underneath the release and admitted that she did not read the release. The judge also noted that the letter written by plaintiff seemed to indicate her intention to settle the claim. The judge did mention that he felt that the release was poorly written.
We find the evidence presented before the trial judge furnished a reasonable factual basis for his finding that defendant proved a release and compromise by a preponderance of the evidence. We will not disturb this finding absent manifest error. Ellison v. Michelli, 513 So.2d 336, 339 (La. App. 4th Cir.1987). Thus we hold that the trial judge's grant of the exception of res judicata was correct.
Finally, plaintiff argues that the essence of this suit is the validity of the compromise agreement. She contends that a compromise agreement cannot be the basis for a plea of res judicata in a suit seeking to annul the agreement.[6] However, we note that this suit was entitled "Petition for Damages." Plaintiff did not assert the invalidity of the compromise agreement. Rather defendant urged its validity as a defense to plaintiff's suit for damages. Plaintiff did not attack its validity until she answered defendant's Motion for Summary Judgment. We hold that the peremptory exception of res judicata was properly asserted by defendant.
For the foregoing reasons we affirm the decision by the trial judge to grant defendant's peremptory exception of res judicata. Costs of this appeal are taxed to plaintiff.
AFFIRMED.
NOTES
[1] All defendants except USF & G were subsequently dismissed.
[2] We note that a peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to submission of the case for a decision. La.C.C.P. art. 928(B).
[3] We note that a Motion for Summary Judgment can be granted by the trial court based on a finding of res judicata. See R.G. Claitor's Realty v. Juban, 391 So.2d 394 (La.1980).
[4] During the hearing on the exception, the trial judge noted that the plaintiff knew that res judicata was being urged as a defense and also knew of the facts relied upon to support that defense.
[5] The draft was sent in January, 1987, but plaintiff apparently did not visit a doctor again until April, 1987. Subsequently, plaintiff saw numerous doctors regarding her physical problems.
[6] See Machost v. Brown, 298 So.2d 109 (La.App. 1st Cir.), writ denied, 302 So.2d 21 (La.1974), and Powell v. Treat, 265 So.2d 678 (La.App. 2d Cir.1972).