STEWART, J.
|! Plaintiffs, the husband and children of Margaret Caldwell (“Caldwell”), appeal a judgment dismissing their wrongful death suit against the defendant, Shady Lake Nursing Home, Inc. (“Shady Lake”), for lack of subject matter jurisdiction and no right of action. The trial court found that workers’ compensation provides the plaintiffs’ exclusive remedy for the heart-related death suffered by Caldwell following an attack by William DiMaggio (“DiMaggio”), a resident of Shady Lake where she was employed as a certified nursing assistant (“CNA”). Finding no error in the trial court’s judgment, we affirm.
FACTS
The facts of this matter have been set forth by this court in Lloyd v. Shady Lake Nursing Home, Inc., 45,180 (La.App.2d Cir.8/25/10), 47 So.3d 609, (Brown, C. J., dissenting),[1] and will not be repeated here. In Lloyd, this court exercised its supervisory jurisdiction to review a denial of a motion for summary judgment filed by Shady Lake on the same issue before us now, namely, whether the plaintiffs’ sole and exclusive remedy is under the workers’ compensation law or whether they may pursue a tort action. Based on the conflicting evidence in the record, this court found genuine issues of material fact as to whether Caldwell suffered a compen-sable heart-related death under the criteria set forth by La. R.S. 23:1021(8)(e) and whether Shady Lake committed an intentional act such that the exclusivity ^provision of the workers’ compensation law would not apply.[2] Our affirmation of the trial court’s judgment left unresolved the issue of whether the plaintiffs’ exclusive remedy for Caldwell’s death is workers’ compensation.
In further proceedings before the trial court, Shady Lake filed an exception of no right of action as a supplement to the declinatory exception of lack of subject matter jurisdiction that it had filed on September 22, 2008. These exceptions placed again before the trial court the issue of whether the plaintiffs’ exclusive remedy is under workers’ compensation. At an evidentiary hearing, Shady Lake presented witnesses who testified and were cross-examined by counsel for the plaintiffs; however, the plaintiffs did not call any witnesses. Instead, plaintiffs sought to introduce the entire record into evidence. Shady Lake objected. It specifically argued that the depositions which had been offered in conjunction with the motions for summary judgment should not be allowed because some of the deponents had testified and any others could have been called as witnesses. The trial court agreed and limited plaintiffs to admitting into evidence Caldwell’s autopsy and certificate of death, DiMaggio’s medical records and indictment, and the transcript from the hearing on the motions for summary judgment.
In its written reasons for judgment, the trial court found that the intentional tort exception under La. R.S. 23:1032(A) did not apply and that |sCaldwell’s heart-related death satisfied the criteria of La. R.S. 23:1021(8)(e). Therefore, the trial court *564 concluded that the plaintiffs’ sole remedy is under workers’ compensation. A judgment sustaining Shady Lake’s exceptions and dismissing the plaintiffs’ tort action was rendered May 5, 2011. The plaintiffs now appeal.
DISCUSSION
The plaintiffs seek review of whether the trial court erred in sustaining Shady Lake’s exception of lack of subject matter jurisdiction and in finding that their sole and exclusive remedy is under workers’ compensation.
The judgment sustained the exceptions of lack of subject matter jurisdiction and no right of action. The trial court explained that both exceptions presented the same issue and that resolution of the exception of lack of subject matter jurisdiction would be dispositive of the exception of no right of action. Plaintiffs’ appeal does not address the exception of no right of action. Thus, we will review this matter under the context of the exception of lack of subject matter jurisdiction only.
Plaintiffs argue that the exception of lack of subject matter jurisdiction simply reasserts the same issue addressed in Shady Lake’s motion for summary judgment and that Shady Lake’s motion was denied by the trial court, affirmed on appeal, and is now a final judgment. This argument is without merit.
The denial of a motion for summary judgment is merely an interlocutory ruling that does not bar reconsideration of the same issues |4raised in the unsuccessful motion. See State ex rel. Div. of Admin., Office of Risk Management v. National Union Fire Ins. Co. of Louisiana, 2010-0689 (La.App.1st Cir.2/11/11), 56 So.3d 1236, footnote 7, writ denied, 2011-0849 (La.6/3/11), 63 So.3d 1023; McIntyre v. St. Tammany Parish Sheriff, 2002-0700 (La.App.1st Cir.3/28/03), 844 So.2d 304; Murphy v. Hoffpauir, 540 So.2d 573 (La.App. 3d Cir.1989), writ denied, 544 So.2d 406 (La.1989). The denial of summary judgment did not produce any ruling on the issue of whether this matter belongs in workers’ compensation or tort that would constitute law of the case and did not preclude Shady Lake from raising the issue again before the trial court.[3]
The district courts are vested with original jurisdiction over all civil and criminal matters unless the Constitution provides otherwise or except as provided by law for administrative agency determinations in worker’s compensation matters. La. Const. Art. V, Sec. 16. As a court of general jurisdiction, the district court has jurisdiction over a claim generally related to workers’ compensation unless the legislature, through some specific provision of the workers’ compensation act, designated the claim a workers’ compensation matter or otherwise granted hearing officers (workers’ compensation judges) authority to adjudicate the claim. Williams v. Midwest Employers Cas. Co., 28,118 (La.App.2d Cir.2/28/96), 669 So.2d 616, writ denied, 96-0820 (La.5/17/96), 673 So.2d 610. As indicated by the supreme court, the underlying issue of whether an accident is work-jrelateds and therefore belongs in workers’ compensation should be resolved pretrial by an exception, such as lack of subject matter jurisdiction or no right of action, or by a motion for summary judgment. Brewton v. Underwriters Insurance Co., 2002-2852 (La.6/27/03), 848 *565 So.2d 586, footnote 2, (Johnson, J., concurring). Accordingly, the exception of lack of subject matter jurisdiction is an appropriate procedural vehicle for determining whether the plaintiffs’ exclusive remedy is workers’ compensation.
Where the lack of subject matter jurisdiction is not apparent on the face of the plaintiff’s petition, the burden is on the defendant to offer evidence in support of the exception. La. C.C.P. art. 930; Miller v. Harper, 99-316 (La.App.3d Cir.10/13/99), 747 So.2d 642; Crockett v. State, Through Dept. of Public Safety and Corrections, 97-2528 (La.App.1st Cir.11/6/98), 721 So.2d 1081, writ denied, 98-2997 (La.1/29/99), 736 So.2d 838. Here, the burden is on Shady Lake to prove that it is entitled to tort immunity under the workers’ compensation provisions. O’Regan v. Preferred Enterprises, Inc., 98-1602 (La.3/17/00), 758 So.2d 124, footnote 20.[4]
|fiWhen evidence is introduced at a trial on an exception, appellate review is governed by the traditional rules applicable to its review of facts. Bates v. Allstate Ins. Co., 2010-0234 (La.App.4th Cir.9/29/10), 48 So.3d 1141. The trial court’s factual determinations will not be overturned in the absence of manifest error or unless they are clearly wrong. Stobart v. State, Through Dept. of Transportation and Development, 617 So.2d 880 (La.1993).

Intentional Tort Claim

Plaintiffs argue that their tort action based on Shady Lake’s intentional and negligent acts is not barred by the workers’ compensation exclusivity provision. They assert that Shady Lake knew DiMaggio was aggressive and combative, that it did nothing to protect Caldwell from his conduct, and that its failure to provide any protection was an intentional act that was substantially certain to cause injury to her.
Generally, if an employee receives a personal injury by accident arising out of and in the course of employment, the employer is required to pay compensation benefits. La. R.S. 23:1031(A); Lloyd, supra; Gooden v. B E & K Const., 33,457 (La.App.2d Cir.6/23/00), 764 So.2d 1206. Except for intentional acts, the rights and remedies afforded by workers’ compensation provide the exclusive means for redressing workplace injuries or compensa-ble sickness or disease. La. R.S. 23:1032(A)(1)(a); Lloyd, supra. Intentional torts are not covered by workers’ compensation; thus, a claim based on an intentional act is not barred by the workers’ compensation exclusivity provision.
|7In Lloyd, supra, we addressed the meaning of an intentional act as follows:
Intentional act under the workers’ compensation law means the same as intentional tort. White v. Monsanto Co., 585 So.2d 1205 (1991). The meaning of intent in the context of the exclu *566 sive remedy provision is that the defendant “either desires to bring about the physical results of his act, or believes they were substantially certain to follow from what he did.” Id. at 1208. Thus, intent refers to both consequences that are desired and those that are substantially certain to result from the defendant’s act. Id., citing Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981).
Id. at 616.
Jurisprudence explains that “believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers’ compensation.” Reeves v. Structural Preservation Systems, 98-1795 (La.3/12/99), 731 So.2d 208; Reynolds v. Louisiana Plastic, 44,803 (La.App.2d Cir.10/28/09), 26 So.3d 149, writ denied, 2009-2805 (La.3/5/10), 28 So.3d 1013. Even gross negligence does not rise to the level of an intentional act. Reynolds, supra.
Shady Lake’s evidence established that DiMaggio resided there for no more than two weeks shortly after being discharged from Golden Age Senior Care Hospital (“Golden Age”). Medical records show that his discharge diagnoses included impulse control disorder, dementia and associated psychotic disorder from a closed head injury, and a history of chemical dependency and alcoholism. His discharge summary indicated that DiMaggio had infrequent explosive outbursts without provocation.
|sPrior to DiMaggio’s admission to Shady Lake, his condition was made known to the administrator, Don Temple (“Temple”), and the medical director, Dr. Joseph Bailey (“Dr. Bailey”). Temple was aware that DiMaggio had knocked holes in a wall during bath time while residing at another home. Since that had occurred, DiMaggio had been treated at Golden Age and released to return to nursing home care. Temple testified that he had received no reports of DiMaggio ever attacking anyone prior to the incident involving Caldwell. Temple noted that Shady Lake cared for patients with problems similar to DiMaggio’s. He believed that Shady Lake could provide care for DiMaggio without him presenting a danger to other residents or staff.
Temple testified that he neither wanted nor expected Caldwell to get hurt by DiMaggio. He was “totally shocked” by the attack on Caldwell and in no way felt that it was inevitable or certain that DiMaggio would injure anyone at Shady Lake.
Dr. Bailey testified that he knew that DiMaggio could have violent outbursts and had a history of not controlling himself at times. However, he and the discharging physician felt that DiMaggio could be managed in a nursing home setting without endangering anyone. Dr. Bailey was surprised by the incident that occurred and did not expect something like that to happen.
Chastity Spencer (“Spencer”), an LPN at Shady Lake, was aware that DiMaggio sometimes used foul language and that he had “jumped at” nursing assistants before the attack on Caldwell happened. Another LPN, | sChristie Simpson (“Simpson”), was in the process of preparing DiMaggio’s care plan based on his diagnoses and medications. She was aware that he had a tendency for combative behavior and verbal abuse, particularly at bath time. She defined combative as meaning that a patient resists care and may push, but that it does not necessarily include striking. She had no history of DiMaggio ever hitting anyone. She related the difficulties he posed in his initial days at Shady Lake. According to Simpson, DiMaggio wet him *567 self and then did not want to change his clothes, he urinated on a wall, he threw a dinner tray off a table, and he “cussed” frequently. However, Simpson said that the nursing charts showed he was becoming more cooperative. He resided in a room with other residents, and there had been no complaints about him from them. She noted that Shady Lake has residents similar to DiMaggio and is able to provide care for them. Simpson was surprised at what happened between DiMaggio and Caldwell, and she did not know of anyone at Shady Lake who intended for Caldwell to be hurt by DiMaggio.
In Reeder v. Laks Corporation, 555 So.2d 7 (La.App. 1st Cir.1989), writs denied, 559 So.2d 142 (La.1990), workers’ compensation was determined to be the exclusive remedy for an employee of a nursing care facility who filed a tort suit for damages after being injured when hit by a mental patient. Noting that the plaintiff was employed to provide care for the patient and was in the course in and scope of her employment when injured, the court stated that these “types of work-related injuries are the very accidents covered by the worker’s compensation statute.” Id. at 10. The court also found that the allegations actually stated claims for negligent |insupervision and failure to provide a safe workplace and concluded that recovery for accidents due to unsafe work conditions is limited to workers’ compensation. Id.
The same result was reached in Manor v. Abbeville General Hospital, 2006-500 (La.App.3d Cir.9/27/06), 940 So.2d 888, when a nurse sued her employer for damages after being injured when a mental patient with known violent tendencies pushed her through a door. The court rejected the argument that the accident was substantially certain to occur because the hospital knew the patient was prone to violence, yet failed to do anything to prevent his violent acts. It found this interpretation of substantial certainty to be too broad for purposes of the intentional act exception to the workers’ compensation exclusivity provisions.
This ease presents facts remarkably similar to those in Manor, supra, and Reeder, supra, and we are constrained to reach the same conclusion as to the plaintiffs’ intentional tort claim. Our review shows that the intentional tort exception under La. R.S. 23:1032(A)(l)(a) does not apply. It is clear that Shady Lake knew of DiMaggio’s condition and propensity for combative behavior when it admitted him as a resident. However, DiMaggio had been released to return to nursing home care, and Shady Lake, which had residents with similar problems, believed that DiMaggio could be provided appropriate care in a nursing home setting.
It is also clear that the evidence falls short of establishing that Shady Lake either consciously desired to bring about Caldwell’s injury or death or believed that such was substantially certain to follow from DiMaggio’s [ ^ ^ admission as a resident. There is no evidence indicating that DiMaggio had ever attacked anyone before the attack on Caldwell. The heart of the plaintiffs’ claim is that knowing of DiMaggio’s condition, Shady Lake failed to take precautions to protect Caldwell from injury. This is, as in Reeder, supra, a claim of failure to provide a safe workplace and is recoverable under workers’ compensation.
We find no manifest error in the trial court’s factual findings and conclusion that the intentional act exception to the exclusive remedy rule of workers’ compensation does not apply.

Heart-related or Perivascular Injuries

Plaintiffs argue that they may still assert a negligence claim because Caldwell’s *568 death was not the result of a work-related accident and is not compensable under workers’ compensation. They contend that the facts do not satisfy the heightened burden under La. R.S. 23:1021(8)(e) for proving that heart-related or perivascular injuries are compensable.
La. R.S. 23:1021(8)(e) states:
(e) Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
112Both of the above elements must be proven by clear and convincing evidence for a heart-related or perivascular injury, illness, or death to be compensable under workers’ compensation. Lloyd, supra; Gooden, supra. Proof by clear and convincing evidence means that the existence of the disputed fact is highly probable, that is, much more probable than its nonexistence. Gooden, supra.
The heightened burden of proof is intended to exclude from workers’ compensation coverage those employees who just happen to suffer a perivascular or heart-related injury at work. Id. When a worker has some personal risk, such as would predispose him to suffer a heart attack or stroke, the employment must be clearly shown to have increased the risk of injury for it to be compensable. Id.; Laumann v. Dulac Shipyard, Inc., 95-2269 (La.App.1st Cir.6/28/96), 676 So.2d 828, writ denied, 96-1986 (La.1/10/97), 685 So.2d 142.
First, we must determine whether it has been shown by clear and convincing evidence that Caldwell’s physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average CNA. It must be shown that Caldwell’s physical work stress went beyond what was usual, customary or regular for the average employee in her occupation. Harold v. La Belle Maison Apartments, 94-0889 (La.10/17/94), 643 So.2d 752; Gooden, supra. This is a question of fact that is determined by whether a reasonable person of usual sensibilities would find the stress “extraordinary.” Gooden, supra.
| isSpencer was the only witness to testify who was present when the attack occurred. Spencer was on duty that night at the nurses’ station. She recalled that Caldwell was cleaning the front area of the lobby when DiMaggio came to the lobby area. Spencer, whose back was turned to the area where Caldwell was working, heard Caldwell ask him to return to bed until the floor dried. DiMaggio replied using foul language and then Spencer heard sounds she described as tussling or a fight. She turned and jumped up upon seeing Caldwell and DiMaggio together and swinging at each other. Within seconds Spencer and other employees broke up the fight. DiMaggio was taken to his room. Spencer described Caldwell as being “very, very upset.” She went with Spencer to the nurses’ station to call Temple. Spencer noticed that Caldwell was wheezing and that her breathing was not good. Caldwell said she was OK, but her condition worsened. Spencer testified that *569 they tried to get Caldwell into a car to transport her to a hospital, but she went back inside the nursing home and said she needed oxygen. Spencer went to get the oxygen tank and returned to find Caldwell collapsed in front of the nurses’ station. They began CPR and called for an ambulance.
Spencer testified that Caldwell was performing her normal duties when the incident with DiMaggio began. However, she testified that what occurred between DiMaggio and Caldwell was not normal physical activity for a CNA and was an unusual event. Spencer admitted that it is not uncommon for CNAs to be hit by patients in a nursing home and that such behavior usually occurs during patient care. However, Spencer explained |14that this was unusual and different due to the magnitude of the event. In seven years as a nurse, Spencer had never seen any similar altercation occur between a nursing home resident and employee. She testified that the altercation put an unusual amount of stress on everyone working that night.
Simpson also testified that it is not uncommon for a nursing home resident to hit a nurse. But she described the incident that occurred between DiMaggio and Caldwell as unexpected and very unusual. She noted that DiMaggio had not hit anyone before that night.
Temple also testified that it is not uncommon for elderly residents to hit nursing home employees who are trying to provide care for them. He had even been hit by a couple of residents. However, he explained that what DiMaggio did was uncommon and that it is not common for employees and residents to get into a fistfight. He described the event as “totally unusual.”
The trial court found that CNAs may occasionally be hit or pushed by elderly or confused patients, but this was a violent attack that forced Caldwell to defend herself. The trial court concluded that the attack by DiMaggio constituted extraordinary work stress. From our review of the record, we cannot say that this finding is manifestly erroneous.
We disagree with the plaintiffs’ argument that Caldwell’s physical work stress was not unusual or extraordinary because she was just mopping when DiMaggio attacked. It is apparent that a CNA’s duties also require interacting with and caring for patients at the nursing home. DiMaggio’s reaction to Caldwell asking him to return to his room until the floor dried 11fiand the fight that ensued constituted unusual and extraordinary physical work stress. While the testimony indicates that it is not uncommon for nursing home staff to be hit while caring for patients, the testimony establishes that what DiMaggio did was not typically experienced by the average CNA. The fight described by Spencer where both Caldwell and DiMaggio were swinging at each other was unusual and extraordinary physical work stress for a CNA, or other nurses, at Shady Lake.
Next, we must determine whether this physical work stress or exertion, rather than some other stress or preexisting condition, was the predominant and major cause of Caldwell’s death. The existence of a preexisting heart condition or risk factor alone will not prevent a heart-related or perivascular injury or death from being compensable under workers’ compensation. Harold, supra; Smith v. Kinder Retirement and Rehabilitation Center, 2006-1480 (La.App.3d Cir.4/4/07), 954 So.2d 365.
The pertinent witness offered by Shady Lake on this issue was Dr. Steven Hayne, who was accepted as an expert in forensic pathology. Dr. Hayne performed the autopsy on Caldwell. He noted that she had *570 severe hypertensive heart disease, an enlarged heart, and moderate coronary artery disease with no more than 30 percent blockage. She was 54 years old and obese. There was a small cut on her tongue, which he related to her having been struck. He concluded that a blow to her face was the underlying cause of death with the immediate cause being heart disease and coronary artery disease. Stated another way, Caldwell died from a blunt force attack superimposed on hypertensive heart disease and coronary artery disease. 11(iDr. Hayne did not believe that Caldwell would have died that night if the attack by DiMaggio had not occurred. He testified that the predominant and major cause of her death was stress caused by the incident with DiMaggio.
When questioned by plaintiffs’ counsel, Dr. Hayne further explained that the fight with DiMaggio would not have resulted in Caldwell’s death if she had not had her preexisting conditions. Due to her large heart and small coronary arteries, she could not withstand the rapid heart rate and increased blood pressure caused by the stress from the attack. Dr. Hayne stated that the attack was a precipitating event that initiated the fatal chain of events that led to Caldwell’s death.
The record shows that Caldwell began having breathing problems almost immediately after the attack. Spencer noticed that Caldwell was wheezing and having difficulty breathing when she was on the phone with Temple after the attack. The record also shows that Caldwell’s condition quickly worsened.
The trial court’s finding that the attack was the predominant and major cause of Caldwell’s heart-related death is not manifestly erroneous. Dr. Hayne’s uncontra-dicted testimony was that physical work stress experienced by Caldwell from the fight with DiMaggio was the predominant and major cause of her heart-related death. Certainly Caldwell’s hypertensive heart disease and coronary artery disease were contributing factors to her death, but Dr. Hayne indicated that these conditions alone would not have caused her death that night. This is not a situation where Caldwell just happened to have a heart attack or stroke |17while performing her job. Rather, it was the stress from the attack that overwhelmed Caldwell’s already burdened cardiovascular system and led to her death.
Having proved both prongs of La. R.S. 23:1021(8)(e) by clear and convincing evidence, Shady Lake has demonstrated that Caldwell’s heart-related death is a com-pensable personal injury by accident arising out of and in the course of her employment.
In Lloyd, supra, we found that the conflicting evidence created issues of material fact that precluded summary judgment in favor of Shady Lake on whether the plaintiffs’ exclusive remedy is in workers’ compensation. Now that the trial court has conducted an evidentiary hearing on the exception of lack of subject matter jurisdiction and made findings of fact in favor of Shady Lake, our review under the manifest error standard compels that we affirm the trial court’s judgment and find that the plaintiffs’ exclusive remedy for Caldwell’s death is under workers’ compensation.
CONCLUSION
For the reasons explained, we affirm the trial court’s judgment sustaining Shady Lake’s exception of lack of subject matter jurisdiction and dismissing the plaintiffs’ suit. Costs of the appeal are assessed against the plaintiffs.
AFFIRMED.
*571 LOLLEY, J., dissents with written reasons.
WILLIAMS, J., dissents for the reasons assigned by LOLLEY, J.

. Chief Judge Brown would have reversed the trial court’s judgment and rendered summary judgment in favor of Shady Lake.

. As dicta, this court suggested that if Caldwell's heart-related death did not meet the criteria to be compensable under workers’ compensation, then the plaintiffs would not be bound by the exclusivity provisions of the workers’ compensation law and could pursue their negligence claims.

. We note that judicial economy would have been better served if Shady Lake had proceeded to have a hearing on its exception of lack of subject matter jurisdiction filed with its answer on September 22, 2008, instead of filing a motion for summary judgment on the same essential issue.

. In O’Regan, supra, the plaintiff first sought workers’ compensation, but her claim was denied for failure to prove that she suffered a compensable occupational disease. She then filed a tort suit. The employer responded with a motion for summary judgment on the grounds that the plaintiff’s sole remedy was in workers’ compensation. Addressing the burden of proof, the supreme court explained that when an employee seeks and is denied workers’ compensation and then files a tort suit, the burden remains with the employee to prove that her compensation claim was rejected "on the ground that the injury or disease was not within the exclusive coverage provisions of the Act.” Id. at 140. However, in footnote 20, the court further explained that if an employee first pursues a tort claim and the employer claims immunity under the workers’ compensation provisions, then "the employer has the burden of proving entitlement to immunity.” Id.