STANLEY R. PALOWSKY, III,
INDIVIDUALLY AND ON BEHALF OF
ALTERNATIVE ENVIRONMENTAL
SOLUTIONS, INC.

VERSUS

ALLYSON CAMPBELL

NO. 21-CA-358

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FOURTH JUDICIAL DISTRICT COURT
PARISH OF OUACHITA, STATE OF LOUISIANA
NO. 15-2179
HONORABLE JEROME J. BARBERA, III, JUDGE AD HOC, PRESIDING

March 30, 2022

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Stephen J. Windhorst

<u>**AFFIRMED**</u>
   **RAC**
   **JGG**
   **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
STANLEY R. PALOWSKY, III
Joseph R. Ward, Jr.
Sedric E. Banks

COUNSEL FOR DEFENDANT/APPELLEE,
JUDGE H. STEPHEN WINTERS, JUDGE CARL V. SHARP, JUDGE
BENJAMIN JONES, JUDGE J. WILSON RAMBO, AND JUDGE FREDERIC C.
AMMAN
Jon K. Guice
Justin N. Myers

**CHAISSON, J.**

Stanley R. Palowsky, III, individually and on behalf of Alternative Environmental Solutions, Inc. (AESI), appeals a March 15, 2021 judgment of the trial court sustaining an exception of no cause of action filed by Judge Benjamin Jones and dismissing with prejudice claims and allegations made in paragraph 78 of his Second Supplemental and Amended Petition for Damages. For the following reasons, we affirm the judgment of the trial court.

**FACTS AND PROCEDURAL HISTORY**

Mr. Palowsky filed an original Petition for Damages on July 22, 2015, in the 4th Judicial District Court, Parish of Ouachita, wherein he named as defendant Allyson Campbell, an employee of the 4th JDC ("the *Campbell* case"). In his petition, he alleged that Ms. Campbell, acting under color of law but outside the course and scope of her employment duties as a law clerk for the court, "… spoliated, concealed, removed, destroyed, shredded, withheld, and/or improperly 'handled' court documents such as memoranda of law, orders, pleadings, sealed court documents, and chamber copies of pleadings filed with the clerk and hand-delivered to the judge's office" relating to another case in which Mr. Palowsky was a party, *Palowsky v. Cork, et al.*, No. 13-2059, 4th JDC ("the *Cork* case"). Mr. Palowsky further alleged that Ms. Campbell acted willfully and maliciously to cause him injury and loss as well as obtain an unjust advantage for his opponent.

Before Mr. Palowsky filed his original petition in the *Campbell* case, the judge assigned to handle the *Cork* case recused himself. The *Cork* case was then reassigned to Judge Carl V. Sharp. Thereafter, on June 12, 2015, Mr. Palowsky filed a motion in the *Cork* case to recuse the 4th JDC judges *en banc* on the basis that Ms. Campbell and the judges of the 4th JDC had become inextricably intertwined in litigation when Chief Judge H. Stephen Winters, on behalf of the

21-CA-358                                      1

judges, filed suit against *The Ouachita Citizen* newspaper to protect the privacy rights of court employees.

On July 31, 2015, Mr. Palowsky filed in the *Campbell* case a First Supplemental, Amended, and Restated Petition for Damages wherein he added as defendants five 4th JDC judges: Chief Judge H. Stephen Winters, Judge Carl V. Sharp, Judge Benjamin Jones, Judge J. Wilson Rambo, and Judge Frederic C. Amman. In the amended petition, Mr. Palowsky alleged that the judges, acting in their administrative, rather than their judicial capacity, conspired and schemed with Ms. Campbell to cover up the mishandling and destruction of court documents.

In response to the amended petition, defendants filed motions to strike several of the paragraphs of the petition and peremptory exceptions of no cause of action based on judicial immunity. The trial judge, sitting *ad hoc*, ordered several of the paragraphs from the original petition stricken and sustained exceptions of no cause of action for all defendants. Mr. Palowsky then appealed that judgment.

On appeal, a five-judge panel of the First Circuit Court of Appeal opined that some, but not all, of the paragraphs from the petition were incorrectly stricken, that Campbell was not entitled to judicial immunity for alleged actions in destroying or concealing court documents because that was not part of the judicial process, and that the judges were entitled to judicial immunity because, under the allegations, they were not acting in the clear absence of jurisdiction, their actions were done in their judicial capacity, and there were no allegations of participation by the judges in the destruction of documents.[1] *Palowsky v. Campbell*, 16-1221 (La. App. 1 Cir. 4/11/18), 249 So.3d 945.

Thereafter, the Louisiana Supreme Court, in a *per curiam* decision, reversed that portion of the First Circuit's opinion that held the judges were entitled to

---

[1] The appeal was transferred from the Second Circuit Court of Appeal to the First Circuit Court of Appeal by order of the Louisiana Supreme Court.

21-CA-358                                        2

judicial immunity for their actions. *Palowsky v. Campbell*, 18-1105 (La. 6/26/19), 285 So.3d 466. The Supreme Court stated:

> …[W]e find plaintiff's allegations regarding the judges' supervision and investigation of the law clerk's activities arise in the context of the judges' administrative functions, rather than in the course of their judicial or adjudicative capacities. In *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), the United States Supreme Court held that a judge's exercise of administrative functions, such as "supervising court employees and overseeing the efficient operation of a court—may have been quite important in providing the necessary conditions of a sound adjudicative system," but such administrative decisions "were not themselves judicial or adjudicative." Therefore, accepting on [sic] the well-pleaded allegations of plaintiff's petition, absolute judicial immunity would not apply, and plaintiff is able to state a cause of action against the judges.

*Id*. at 467-68.

In reaching this conclusion, the Court emphasized that the opinion should not be read as undermining or eroding the strong principles of absolute judicial immunity, but rather that "under the narrow and specific parameters of plaintiff's petition, plaintiff has alleged sufficient facts to state a cause of action against the judges." *Id*. The Court then decreed that the exceptions of no cause of action by the judges be denied, but otherwise affirmed the judgment of the First Circuit.

Following this decision by the Supreme Court, on October 15, 2020, Mr. Palowsky filed a Second Supplemental and Amended Petition for Damages in which he re-alleged all of the allegations stated in the First Supplemental, Amended, and Restated Petition for Damages, other than those articles stricken by the First Circuit Court of Appeal and affirmed by the Louisiana Supreme Court, and additionally amended and supplemented paragraph 78 to state additional facts and assert an additional cause of action against Judge Benjamin Jones. In particular, Mr. Palowsky alleged the following: in 2015, while the motion to recuse the entire 4th JDC *en banc* was pending in the *Cork* case before Judge Sharp, and sometime following an August 20, 2015 hearing on the motion, Judge

Sharp prepared a draft ruling on the motion which he forwarded to Judge Jones for review. Judge Jones then returned this draft with corrective edits and a handwritten note suggesting that Judge Sharp deny the motion to recuse. On August 25, 2015, Judge Sharp denied the motion to recuse *en banc* and issued a stay of all discovery. Thereafter, Mr. Palowsky filed a writ application for review of these rulings, and on October 22, 2015, the Second Circuit Court of Appeal granted his writ application, declared the actions taken by the trial court, including the order staying the proceedings, an absolute nullity, and remanded the matter to the trial court for resolution of the motion to recuse *en banc* and the appointment of an ad hoc judge. On October 28, 2015, the 4th JDC judges jointly signed an order of recusal for the *Cork* case.

In light of these facts, Mr. Palowsky alleged that Judge Jones "engaged in actions intended to directly affect the outcome of the *Cork* case to the advantage of the defendants in this matter and to the disadvantage of Palowsky. Such acts constitute illegal case fixing through unethical ex parte communications directly with Judge Sharp which successfully changed a substantive ruling in a case in which both judges had a financial interest." Mr. Palowsky further alleged that Judge Jones' intent was to cause additional damages to Mr. Palowsky and AESI in the *Cork* case and in the *Campbell* matter, and that the acts of Judge Jones constitute fraud and abuse of process which have caused additional damages to them. Finally, he stated that he does not seek additional damages against Judge Sharp for these alleged acts because Judge Sharp has judicial immunity from civil damages for his participation in the alleged acts, but that Judge Jones has no such immunity.

In response to this petition, the judges filed an Answer and Exception to Original, First and Second Supplemental, Amended and Restated Petitions for Damages. In their exception of no cause of action, they argue that the actions

taken by Judge Jones as set forth in paragraph 78 of the Second Amended Petition are entitled to the protections of absolute judicial immunity. Subsequent to a hearing, the trial court rendered judgment, with written reasons, on March 14, 2021, sustaining the exception of no cause of action and dismissing with prejudice all of the allegations set forth against Judge Jones in paragraph 78 of the Second Amended Petition. This judgment was declared final after a determination that there was no just reason for delay, as required by La. C.C.P. art. 1915. Mr. Palowsky's timely appeal followed.[2]

On appeal, Mr. Palowsky assigns as error: (1) the trial court's finding that he did not state a cause of action against Judge Jones and thereby sustaining the exception of no cause of action; and (2) the trial court's failure to give him the opportunity under La. C.C.P. art. 934 to amend his petition to state a cause of action.

**DISCUSSION**

The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. *State, Div. of Admin., Office of Facility Planning & Control v. Infinity Sur. Agency, L.L.C.*, 10-2264 (La. 5/10/11), 63 So.3d 940, 945. A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.*, 616 So.2d 1234, 1238 (La. 1993). No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931. The court reviews the petition and accepts the well-

---

[2] The appeal was transferred from the Second Circuit Court of Appeal to the Fifth Circuit Court of Appeal by order of the Louisiana Supreme Court.

pleaded allegations of fact as true. *Khoobehi Properties, LLC v. Baronne Dev. No. 2, L.L.C.*, 16-506 (La. App. 5 Cir. 3/29/17), *writ denied*, 17-0893 (La. 9/29/17), 227 So.3d 288. Because Louisiana utilizes a system of fact pleading, it is not necessary for a plaintiff to plead a theory of the case in the petition; however, mere conclusions of the plaintiff unsupported by the facts do not set forth a cause of action. *Meckstroth v. Louisiana Dept. of Transp. & Dev.*, 07-0236 (La. App. 4 Cir. 6/27/07), 962 So.2d 490.

In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a *de novo* review because the exception raises a question of law and the lower court's decision is necessarily based solely on the sufficiency of the petition. *Id.* The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is entitled to the relief sought. Whether the plaintiff can prove the allegations set forth in the petition is not determinative of the exception of no cause of action. *Wood v. Omni Bancshares, Inc.*, 10-216 c/w 10-567 (La. App. 5 Cir. 4/26/11), 69 So.3d 475, 480. Because the trial of the exception is solely on the face of the pleadings, the court may not go beyond the petition to the merits of the case. *Id.*

*Exception of No Cause of Action*

Mr. Palowsky first argues that the trial court erred in sustaining the exception of no cause of action because a court should not sustain an exception of no cause of action if *any* cause of action has been stated in the petition. In other words, the law does not allow for a partial exception of no cause of action. In support of this argument, he cites to *MD Care, Inc. v. Angelo*, 95-2361 (La. App. 4 Cir. 3/20/96), 672 So.2d 969, 970, *writ denied*, 96-0986 (La. 5/31/96), 673 So.2d 1039 (*citing Everything on Wheels Subaru, Inc.*, *supra*) for the proposition that "[i]f the petition states a cause of action on any ground or theory of recovery arising from the same transaction or occurrence, the exception should be

overruled." However, Mr. Palowsky's reliance on this case is misplaced: not only is it procedurally distinct from the case *sub judice*, but, since this ruling, the Louisiana Code of Civil Procedure was amended in 1996 to expressly provide for partial exceptions of no cause of action.

In *MD Care*, the 4th Circuit Court of Appeal reviewed a ruling of the trial court that denied an exception of no cause of action filed by one of the defendants, Dr. John Angelo. Following a review of the plaintiff's entire petition for claims of breach of contract, fraud, interference with a contract, unfair trade practices, consumer protection law, and abuse of rights, the 4th Circuit found that the plaintiff's allegations were supported by mere conclusions of law and that the petition failed to assert facts upon which the plaintiff could recover under any of these theories of recovery. The judgment of the trial court was reversed and the court granted Dr. Angelo's exception of no cause of action, dismissing the claims against him with prejudice. This was not a case where the defendant sought dismissal of some, but not all of the claims against him, and with respect to Dr. Angelo, the exception of no cause of action filed was in no way partial.

The case *sub judice* is distinguishable from *MD Care* in that the trial court was considering an exception of no cause of action aimed solely at the allegations against Judge Jones set forth in paragraph 78 of the Second Amended Petition. In its ruling, the trial court sustained the exception of no cause of action only with respect to those specific claims.

Partial exceptions of no cause of action that dismiss one or more but less than all of the actions, claims, demands, issues, or theories against a party are expressly authorized in the Louisiana Code of Civil Procedure. *See* La. C.C.P. arts. 1915(B)(1) and 934. As noted in the Official Comments to Article 934, the Code of Civil Procedure was amended in 2003 "to clarify that pursuant to Article 1915(B) the trial court can now render a partial judgment sustaining an exception

in part as to one or more but less than all of the actions, claims, demands, issues, or theories in the case." Prior to these amendments, Louisiana courts had developed a general rule that if a petition stated a cause of action as to any ground or portion of the demand, the exception of no cause of action should generally be overruled. *Everything on Wheels Subaru, Inc. v. Subaru S., Inc., supra.* The purpose of such a rule was to prevent a multiplicity of appeals which forces an appellate court to consider the merits of the action in a piecemeal fashion. *Id.* In *Everthing on Wheels Subaru*, the Louisiana Supreme Court articulated the following rule for partial exceptions of no cause of action:

> [A] trial court, in considering an exception of no cause of action in multiclaim litigation in which the court might rule in favor of the exceptor on less than all claims or on the rights of less than all parties, must first determine whether (1) the petition asserts several demands or theories of recovery based on a single cause of action arising out of one transaction or occurrence, or (2) the petition is based on several separate and distinct causes of action arising out of separate and distinct transactions or occurrences.
>
> *Id.* at 1242.

The Court acknowledged that such a determination is frequently difficult, especially when possibly separate causes of action arise out of overlapping sets of operative facts. *Id.* at 1238. The determination must be made on a case by case basis. *Id.*

While this test has not been codified as part of the amendments to La. C.C.P. arts. 1915 or 934, we nevertheless find its application useful in this case as a means for determining whether the allegations set forth in the Second Amended Petition state causes of action which are separate and distinct from those stated in the Original and First Amended Petitions that the Louisiana Supreme Court has already determined are not subject to dismissal under judicial immunity. If the causes of action are separate and distinguishable, we must then determine whether the alleged actions are subject to judicial immunity, before finally determining

whether the trial court erred in denying Mr. Palowsky an opportunity to amend his petition. Accordingly, we review all of Mr. Palowsky's allegations set forth in his Original, First, and Second Amended Petitions, except those allegations that were previously struck.

In his Original Petition, Mr. Palowsky set forth in forty-four numbered paragraphs claims solely against Allyson Campbell, whom he alleges maliciously and intentionally "spoliated, concealed, removed, destroyed, shredded, withheld, and/or improperly 'handled' court documents," including six particular documents filed in the *Cork* case between January and August of 2014. The Original Petition makes no allegations against the judges of the 4th JDC, other than concluding that the court should recuse itself. In his Original Petition, Mr. Palowsky avers that "[Ms.] Campbell's actions constitute fraud, conspiracy to commit fraud, abuse of process, destruction or concealment of public records, intentional infliction of emotional distress, and violation of his rights under the Louisiana Constitution to due process and access to the courts."[3] As a result of these actions, he claims to have suffered damages in the form of "delay, court costs, attorney fees, embarrassment, mental stress, and inconvenience (as referred to in Civil Code article 1953)…"

In his First Supplemental, Amended, and Restated Petition, Mr. Palowsky reavers all of the claims against Ms. Campbell and names the judges as additional defendants. He specifically alleges:

> Defendant Campbell is liable to Palowsky for the damages he has suffered as a result of her fraud, conspiracy to commit fraud, abuse of process, destruction or concealment of public records, intentional infliction of emotional distress, and violation of his rights under the Louisiana Constitution to due process and access to the courts. Defendant Judges are liable *in solido* to Palowsky for damages he has suffered as the result of their aiding and abetting Campbell by allowing her free rein [sic] to do as she pleased and then conspiring to

---

[3] The scope of our review on this partial exception of no cause of action does not include a review of whether Mr. Palowsky has alleged facts sufficient to establish any of these causes of action against Ms. Campbell.

conceal Campbell's acts which compounded the adverse effects of her acts on Palowsky.

In addition to being held liable *in solido* for Ms. Campbell's actions, Mr. Palowsky alleges that the judges, by their own actions, are liable to him for damages as follows:

> … Palowsky submits that not only were Defendant Judges complicit in Defendant Campbell's felonious destruction of documents, but they also schemed and conspired with her to cover up same from the tax-paying public and from litigants and their counsel. Defendant Judges' affirmative acts to cover up Campbell's felonious conduct amounts to misprision of a felony.[4]

Among many statements about the judges' "conspiring" and "scheming," Mr. Palowsky alleges a few specific material facts: that sometime in 2014, Judge Jones conducted an investigation into complaints of Ms. Campbell's destruction of documents, which included interviews with witnesses who heard Ms. Campbell boast of shredding a complaint filed by an attorney involved in a case separate from those filed by Mr. Palowsky; that Judges Rambo, Jones, Sharp, and Winters have repeatedly denied that any documents were missing from the record;[5] and that Judge Jones made representations to counsel that missing documents resulted from nothing more than delays caused by a new filing process in the Clerk's office.

Mr. Palowsky additionally alleges that the judges have violated multiple Canons of the Code of Judicial Conduct.[6] He makes no claim for additional damages in this First Amended petition.

---

[4] The scope of our review on this partial exception of no cause of action does not include a determination of whether Mr. Palowsky belongs to the class of persons to whom the law grants the cause of action asserted here. We note that the misprision of felony statute was specifically repealed by the Legislature in 1942, per the recommendation of the reporter. See Official Reporter's Comment – 1950 to La. Rev. Stat. Ann. § 14:131.

[5] Mr. Palowsky does not specify when, where, or to whom such denials were made.

[6] Mr. Palowsky does not state whether he filed a complaint with the Judiciary Commission concerning these alleged violations. As noted above, in the absence of a properly filed peremptory exception of no right of action, we decline to consider whether Mr. Palowsky belongs to the class of person to whom the law grants the cause of action asserted. We note that Article V, §25 of the Louisiana Constitution provides the Louisiana Supreme Court with exclusive jurisdiction in overseeing enforcement of the Canons of the Code of Judicial Conduct.

In his Second Supplemental and Amended Petition, Mr. Palowsky states that it is submitted "to state additional facts that have recently been discovered relative to this suit and to assert an additional cause of action against an existing defendant based on these facts" for which plaintiff seeks "additional damages." He sets forth the following allegations:

…

78d.

On August 20, 2015, the hearing on Plaintiff's motion to recuse *en banc* was heard before Judge Sharp.

78e.

Thereafter, and unbeknownst to Plaintiff, Judge Sharp prepared a draft ruling on the motion (or someone prepared it on his behalf), which he then forwarded to Judge Jones for review. Judge Jones edited the ruling and sent it back to Judge Sharp with a signed, handwritten letter advising Judge Sharp that he (Judge Jones) had made some corrective edits to the ruling. In addition, though, Judge Jones suggested that Judge Sharp should reconsider his ruling to deny the motion based on his belief that the allegations made against the defendant judges might influence the judge who would have to decide the motion to recuse. The letter from Judge Jones to Judge Sharp states the following:

> Carl,
> I made some comments that respect your decision to allow the en banc motion to recuse stand. However, I think it is a mistake to allow that motion to stand and treat it as a motion to recuse you personally. Why? Because all the awful allegations contained in that motion will be of record. The effect may be that a judge hearing the motion would see all the allegations that do not have anything to do with you and be influence [sic].
> Frankly, I think that unauthorized motion should be dismissed. If they think they have grounds to recuse you, they should file a more narrow motion.
> Ben

78f.

On August 25, 2015, after receiving Judge Jones' *ex parte* communication, Judge Sharp abandoned his draft ruling and issued a ruling that followed Judge Jones' advice.

78g.

On October 22, 2015, the Second Circuit Court of Appeal granted Plaintiff's writ application and issued a ruling indicating that any action that Judge Sharp may have taken in the *Cork* matter after the motion to recuse had been filed was a nullity. The court also recognized the validity of a motion to recuse *en banc* under established Louisiana case law.

…

78j.

Based on the forgoing, it is alleged that Defendant Judge Jones not only engaged in a concerted effort with other defendants to cover up the acts of Campbell as alleged in the First Supplemental, Amended, and Restated Petition for damages, but he also engaged in actions intended to directly affect the outcome of the *Cork* case to the advantage of the defendants in this matter and to the disadvantage of Palowsky. Such acts constitute illegal case fixing through unethical *ex parte* communications directly with Judge Sharp which successfully changed a substantive ruling in a case in which both judges had a financial interest. Judge Jones' intent was to cause additional damages to Palowsky and AESI in the *Cork* case and in this matter.

78k.

The acts of Judge Jones as alleged above constitute fraud and abuse of process which have caused additional damages to Plaintiff.

78l.

No additional damages are sought against Defendant Judge Sharp for the alleged acts above. Plaintiff's claim against Judge Sharp remains for damages asserted against him in the First Supplemental, Amended, and Restated Petition for Damages for the alleged administrative acts he and the other defendant judges engaged in. Though Judge Sharp clearly violated the Canons of Judicial Conduct, specifically Canon 3(A)(6), in the above stated acts, he has judicial immunity for civil damages for his participation in the acts alleged above. To the contrary, Judge Jones has no such immunity, and additional damages are being sought against him.

…

As the trial court correctly observed, these allegations in the Second

Amended Petition do not simply present an alternate theory of recovery arising out

of the same operative facts stated in the Original and First Amended Petitions. The

alleged wrongful actions of Ms. Campbell regarding the missing documents and

the judges' failure to supervise her occurred sometime between 2013 and 2014,

while the alleged actions of Judge Jones set forth in the Second Amended Petition,

which do not relate to missing or concealed documents, allegedly occurred between August 20 and August 25, 2015, more than a year later.

The language of the Second Amended Petition itself also indicates that the allegations set forth therein are a separate and distinct cause of action rather than an alternative theory of recovery. Mr. Palowsky states that he is asserting an "additional cause of action against an existing defendant" and seeking "additional damages," and he makes new allegations of "illegal case fixing" which were never mentioned in the previous petitions.[7] Additionally, Mr. Palowsky states that the actions taken by Judge Sharp in August, 2015, are subject to judicial immunity, but the actions taken by Judge Jones at the same time are not. While these statements are not well-pleaded facts but conclusions of law, and therefore are entitled to no weight in the determination regarding the validity of the exception, such allegations do indicate that Mr. Palowsky believes the actions taken in August, 2015, are separate and removed from those actions alleged in the prior petitions which the Supreme Court has stated are not subject to judicial immunity.

Mr. Palowsky argues that the allegations in the Second Amended Petition have to be related to the allegations in the prior petitions, because Judge Jones' alleged interference with Judge Sharp's planned ruling on the motion to recuse would never have happened if the pleadings and documents in the *Cork* case had not disappeared. We find this "but-for" reasoning unpersuasive. Not only is it contrary to the language set forth in *Subaru*, but, by its logic, any actions taken by the trial court in the *Cork* case could be considered part of a grand conspiracy to cover up the actions of Ms. Campbell.

Upon our *de novo* review, we find that the allegations set forth in Mr. Palowsky's Second Amended petition, while arising out of a set of operative facts

---

[7] Given that the Second Circuit's October 22, 2015 declaration that any actions taken by Judge Sharp following Mr. Palowsky's filing of the motion to recuse are absolutely null, it is unclear what "additional damages" he suffered.

overlapping with the allegations made in the original and First Amended petitions, set forth a separate and distinct cause of action against Judge Jones that is susceptible to a partial exception of no cause of action. We therefore must next determine whether Judge Jones' actions as alleged in the Second Amended Petition are of the kind protected by judicial immunity.

The United States Supreme Court has recognized a long history of judicial immunity and its importance in protecting judges from vexatious actions prosecuted by disgruntled litigants. *Major v. Painter*, 06-470 (La. App. 5 Cir. 10/31/06), 945 So.2d 100, 103. A judge is entitled to absolute immunity where he performs "judicial" acts. *Id*. A judge may not be cast for damages for his errors unless he has acted outside his judicial capacity. *Id*. In determining whether a judge is entitled to absolute immunity for a particular act, a court must draw a distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform. *Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988).

Mr. Palowsky argues that Judge Jones' actions in August, 2015, are not subject to judicial immunity because Judge Jones was not presiding over the *Cork* case and because Mr. Palowsky has alleged that Judge Jones was at all times acting in his capacity as judicial administrator and not as a judge. With regard to this latter statement, we observe that Mr. Palowsky's allegation is a conclusion of law, not a well-pleaded material fact, and therefore need not be accepted as true when evaluating the exception of no cause of action.

Judge Jones was appointed as Supernumerary Judge *pro tempore* by an order of the Louisiana Supreme Court in 2015, at which time he assumed full and complete authority to perform the adjudicative functions of a district judge for the 4th Judicial District Court for the term of the order. The 4th Judicial District Court is vested with original jurisdiction over all civil matters. La. Const. Art. V, §

16(A)(1). Because it is a court of general jurisdiction, the 4th Judicial District Court had jurisdiction over Mr. Palowsky's underlying lawsuit in the *Cork* case. *See*, *Lloyd v. Shady Lake Nursing Home, Inc.*, 47,025 (La. App. 2 Cir. 5/9/12), 92 So.3d 560, 564, *writ denied*, 12-1318 (La. 9/28/12), 98 So.3d 844. As a Supernumerary Judge *pro tempore* for the 4th Judicial District Court, Judge Jones was generally empowered to discuss legal issues pending before the Court and to assist in the case-deciding process. *See* La. C.C.P. arts. 191 and 1631.

We find that the alleged acts complained of by Mr. Palowsky in his Second Amended Petition are not administrative in nature, but rather judicial in nature. Reviewing drafts of proposed orders, providing constructive edits and feedback, and offering one's legal opinion are actions which are at the heart of judicial decision-making. Accordingly, we find that Judge Jones is absolutely immune from the actions alleged in Mr. Palowsky's Second Amended Petition.[8]

*Amendment of the Petition*

Mr. Palowsky additionally argues that the trial court erred by failing to allow him an opportunity to amend his petition to cure the grounds of the objection as required by La. C.C.P. art. 934. In particular, he requests an opportunity to amend the petition to specify in greater detail facts, including public statements made by Judge Jones, that establish that Judge Jones was not acting in a judicial capacity when he communicated with Judge Sharp.

La. C.C.P. art. 934 provides:

> When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

---

[8] Because we find the doctrine of judicial immunity applies in this case, we decline to extend our analysis further to determine whether Mr. Palowsky's Second Amended Petition alleges facts sufficient to state causes of action for fraud, abuse of process, or "illegal case fixing." *See* footnotes 4, 6, and 7, *supra*.

In other words, as this Court has previously stated, the right to amend a petition is qualified by the restriction that the objection be curable. *Hennig v. Alltel Communs., Inc.*, 05-96 (La. App. 5 Cir. 5/31/05), 903 So.2d 1137, 1140 (citing *Nelson v. Williams*, 97-276 (La. App. 5 Cir. 9/30/97), 707 So.2d 440, n.3). Where the amendment would be a vain and useless act, such an amendment is not required by La. C.C.P. art. 934. *Id.*

As noted above, Mr. Palowsky's assertions in the petitions that Judge Jones was at all times acting in his administrative capacity are not well-pleaded facts, but rather conclusions of law. We find that the grounds raised by the exception cannot be removed by amendment, and therefore find no error in the trial court's failure to allow Mr. Palowsky the opportunity to amend his petition.

**CONCLUSION**

For the foregoing reasons, upon our *de novo* review, we find that Mr. Palowsky's Second Amended Petition, even when accepted as true, fails to state a valid cause of action for which relief may be granted. We also find that allowing Mr. Palowsky an opportunity to amend the Second Amended Petition would not cure this defect. We therefore affirm the judgment of the trial court sustaining the exception of no cause of action and dismissing the claims set forth in the Second Amended Petition against Judge Jones, with prejudice.

<u>**AFFIRMED**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 30, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-358

**E-NOTIFIED**
OTHER (CLERK)
HON. JEROME J. BARBERA, III (DISTRICT JUDGE)
JOSEPH R. WARD, JR. (APPELLANT)      SEDRIC E. BANKS (APPELLANT)      STACY R. PALOWSKY (APPELLANT)
LAWRENCE W. PETTIETTE (APPELLEE)      JUSTIN N. MYERS (APPELLEE)      SCOTT L. STERNBERG (APPELLEE)

**MAILED**
JON K. GUICE (APPELLEE)      BRIAN E. CRAWFORD (APPELLEE)
ATTORNEY AT LAW      ATTORNEY AT LAW
1881 HUDSON CIRCLE      POST OFFICE BOX 14600
MONROE, LA 71201      MONROE, LA 71207-4600